IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA,)
                         )
      vs.                )   CRIMINAL CASE NO. GLR-20-210
                         )
JACK ANDERSON, IV,       )
      Defendant.         )
_____)

Thursday, October 1, 2020
Courtroom 7B
Baltimore, Maryland
DETENTION HEARING AND ARRAIGNMENT

BEFORE:  THE HONORABLE GEORGE LEVI RUSSELL, III, Judge

For the Plaintiff:

Christopher Romano, Esquire
Assistant United States Attorney
Jason Hamilton, Esquire
Special Assistant United States Attorney

For the Defendant:

Laura Abelson, Esquire
Office of the Federal Public Defender

Also Present:

Helen Domico, Pretrial Officer
_____

Reported by:

Nadine M. Gazic, RMR, CRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201
410-962-4753

1          **P R O C E E D I N G S**

2          **THE COURT:**  Good morning, everyone. You can remain

3     seated. Mr. Romano, do you want to call the case for me,

4     please?

5          **MR. ROMANO:**  Yes I will, Your Honor. Your Honor,

6     this is The United States of America versus Jack Anderson, IV.

7     It's under Criminal Case GLR-20-210. Representing the United

8     States are Assistant U.S. Attorney Christopher Romano and also

9     present is Special Assistant U.S. Attorney Jason Hamilton who

10    just joined our office last week.

11         **THE COURT:**  I have no idea what you look like. Ms.

12    Ableson?

13         **MS. ABELSON:**  Good morning, Your Honor.  Laura

14    Abelson on behalf of Mr. Anderson, who I believe is in the

15    building and I thought was going to be present for this

16    hearing.

17         **THE COURT:**  Who, Mr. Anderson?

18         **MS. ABELSON:**  Mr. Anderson, the defendant.

19         **THE COURT:**  Right, I was expecting him to be present

20    here as well.

21         **MR. ROMANO:**  There was a come-up done for him.

22         **MS. ABELSON:**  He is present in the building. I spoke

23    to him.

24         **THE COURT:**  Okay, I thought --

25         **MS. ABELSON:**  He's not present in the courtroom.

1          THE COURT:  I was going to await your explanation as

2     to why he was not here.

3          MS. ABELSON:  I'm also awaiting the explanation.

4          THE COURT:  And in the era of remote proceedings and

5     waivers and all these things, I'm just assuming that there's

6     some particular reason why he wasn't here. So we'll wait for

7     him.

8          THE CLERK: Wrong courtroom, sorry. On his way.

9          (Defendant arrived.)

10          THE COURT:  Formally for the record since Mr.

11     Anderson has arrived, Mr. Romano, could you recall the case

12     for me, please?

13          MR. ROMANO:  Certainly, Your Honor. Your Honor,

14     calling The United States of America versus Jack Anderson, IV.

15     It's under Criminal Case GLR-20-210. Representing the United

16     States, Christopher Romano and also present is Special

17     Assistant U.S. Attorney Jason Hamilton and we are here for an

18     appeal on the Government's request for detention as opposed to

19     release in this case.

20          THE COURT:  All right, very well. Ms. Abelson?

21          MS. ABELSON:  Good morning, Your Honor.  Laura

22     Abelson on behalf of Mr. Anderson who is now seated to my

23     right in the courtroom.

24          THE COURT:  Very well. Mr. Anderson, good morning to

25     you, sir.

                    **THE DEFENDANT:**  Good morning.

                    **THE COURT:**  All right. As indicated, we are here for
the purpose of hearing an appeal of the Government relating to
the release of the defendant previously in the District Court
of Arizona. Based upon my review of the documents, it's my
understanding that there is a rebuttable presumption in favor
of detention in this case based upon the charges that were
filed, namely at least one count that contains a minimum
mandatory of 10 years imprisonment and a maximum of life
imprisonment. And as a result, there is -- and a maximum
penalty of life. As a result, there is a rebuttable
presumption favoring detention in that there are no conditions
or combinations of conditions that will reasonably assure the
appearance of the defendant or the safety of the community. Is
that an accurate depiction on why we are here?

                    **MR. ROMANO:**  It is, Your Honor.

                    **THE COURT:**  All right, very well. I know that this
is the Government's appeal. The appeal is de novo so I presume
Ms. Abelson, the burden would be on the defense to establish
the rebuttable presumption; is that correct?

                    **MS. ABELSON:**  Well, Your Honor, my understanding of
the Bail Reform Act is that while I bear the burden of
presumption, the Government still bears the burden of
persuasion.

                    **THE COURT:**  Understood. Mr. Romano, I'll hear from

1    you, sir.

2         **MR. ROMANO:**  Thank you, Your Honor. Your Honor, what

3    I'd like to do first is give the Court some underlying facts

4    that led to the charge, since it is not a speaking indictment.

5    But the case involves an investigation that was being

6    conducted by the Harford County Narcotics Task Force and on

7    May 17th of 2019, members of the task force received

8    information that Mr. Anderson's co-defendant, Che Jaron Durbin

9    would be receiving a kilogram of cocaine that was being

10   shipped from Tucson, Arizona to Aberdeen, Harford County,

11   Maryland.

12        Detectives learned that the parcel containing the

13   kilogram was to be delivered by the postal service to an

14   address at 1003 Warwick Drive, Apartment 1B in Aberdeen. At

15   about 4:40 p.m., detectives observed the postal carrier make

16   contact with the co-defendant, Mr. Durbin, and handed him a

17   parcel. The detectives observed Mr. Durbin and carried the

18   parcel inside 1003 Warwick Drive and approximately a half-hour

19   later a black female who was later identified as Jameka Cara

20   Thompson, a co-defendant, was observed carrying that package,

21   that very same package outside of the apartment in Aberdeen,

22   place it into her vehicle and drive off.

23        Detectives followed Ms. Thompson and then at one

24   point she was detained and a search warrant was requested and

25   obtained from a District Court judge in Harford County to

search the vehicle and the package. The package when it was

recovered was found to be addressed to a fictitious address

called True Homes, LLC, but at the 1003 Warwick Drive

location. The sender of that package was listed as Samuel

Johnson, 7601 East Dogwood Street in Tucson, Arizona. The

package once it was seized was field tested and tested

positive for the presence of cocaine.

The detectives also subsequently learned that the

defendant, Mr. Anderson, resided at 7661 East Dogwood Street.

Again, the package was -- sender was Samuel Johnson of 7601

East Dogwood Street.

Subsequent processing of that package revealed that

the defendant's palm prints were located on that package that

contained the kilogram of cocaine.

In January of 2020, on January 22nd to be precise,

detectives learned of another parcel, this time a package

being mailed from Havre De Grace, Maryland to Tucson, Arizona.

The sender of the package was the co-defendant, Che Durbin,

used the same address of 1003 Warwick Drive Apartment 1B.  And

this time the package was addressed to Jack Anderson at 7661

East Dogwood Street in Tucson.  That is or was his real

address.

The investigators subsequently obtained an

information from the postal inspectors in Tucson and that

package was returned to Maryland. Once the package was

1    returned to Maryland, a postal inspector here in conjunction

2    with an Anne Arundel County detective and that detective's K-9

3    partner Mickey, who was a certified narcotics detection dog,

4    conducted a scan of that package and it was determined that

5    there was an alert for the presence of possibly narcotics.

6    Subsequent to that alert, the postal inspector here applied

7    for and received a search warrant from U.S. Magistrate Judge

8    J. Mark Coulson and then the package was subsequently

9    searched.

10          Contained in the package detectives observed was a

11   Beats Solo 3 wireless headphone box. Inside the headphone box

12   were several stacks of U.S. currency packaged in a fashion

13   that based on the agent's training, knowledge, and experience

14   believed to be consistent with drug trafficking. The total

15   amount of the currency was $82,300. Detectives here contacted

16   DEA agents in Tucson who advised that that amount of money

17   would be the equivalent of purchasing 4 kilograms of cocaine

18   from a source state such as Arizona.

19          Subsequent to that, Your Honor, then moving forward

20   into May of this year, specifically May 7th of 2020,

21   detectives observed a co-defendant, Che Durbin, leave his

22   residence and travel by vehicle west across the United States

23   arriving in Tucson, Arizona on May 8th at about 9:15 p.m.

24          Harford County narcotics detectives flew from

25   Maryland to Tucson and then met up with detectives and HIDTA

 1    Task Force officers in Tucson, Arizona. The detectives

 2    followed the co-defendant, Che Durbin, to a Staybridge Suites

 3    Hotel in Tucson and during that time they observed Mr. Durbin

 4    check into a hotel room.  And after a brief period of time,

 5    they followed Mr. Durbin from that hotel to a La Quinta Inn

 6    located in Tucson, Arizona where Mr. Durbin then met with the

 7    defendant, Jack Anderson.

 8         After a brief period of time, Mr. Durbin then

 9    reentered the vehicle that he had driven across country in and

10    traveled to the Tucson airport and parked in a driveway

11    designated for arriving passengers. Detectives maintained

12    surveillance on Mr. Durbin and observed him meet with Jameka

13    Thompson, a co-defendant in this case. Both Ms. Thompson and

14    Mr. Durbin then left and proceeded back to the Staybridge

15    Suites Hotel.

16         The next day on May 9th, Mr. Durbin booked a return

17    flight from Tucson back to Maryland arriving in Maryland later

18    in the afternoon. While Mr. Durbin was traveling back to

19    Maryland, surveillance observed Ms. Thompson meet with the

20    defendant, Jack Anderson, at the La Quinta Inn in Tucson. Ms.

21    Thompson then subsequently investigators believe had obtained

22    cocaine from Mr. Anderson and began driving east on I-10 from

23    Arizona towards New Mexico. Detectives tracked her as she

24    traveled into New Mexico and at about 6:30 that evening, they

25    observed Ms. Thompson turn around and proceed west on I-10

1    back to Tucson, Arizona.

2            As Mr. Durbin had landed at BWI airport, the

3    detectives believed that he had been in contact with Ms.

4    Thompson and they surmised that Ms. Thompson did not have the

5    appropriate amount of cocaine. And once Mr. Durbin

6    communicated with Ms. Thompson and directed her to return to

7    Arizona, she did so.  And at about 8:25 p.m. that evening,

8    detectives observed Ms. Thompson meet again with Mr. Anderson.

9    Mr. Anderson took possession of the vehicle that Mr. Durbin

10   had previously driven from Maryland to Arizona. Ms. Thompson

11   then took possession of a rental minivan and drove to a

12   DoubleTree Suites also located in Tucson, Arizona.

13           Shortly after that, Mr. Anderson arrived at the

14   DoubleTree Suites, secured a room for both himself and Ms.

15   Thompson and left. He returned a short while later in that

16   Chevy Suburban. He then went into the hotel, made contact with

17   Ms. Thompson and after a brief period of time, he left the

18   hotel again.

19           The next day on May 10th at about 7 in the morning,

20   Ms. Thompson loaded her belongings into the rental van and

21   left and traveled from Tucson back to Maryland and she arrived

22   in Harford County on May 12th at about 1 in the morning.

23           Law enforcement obtained a search warrant for a

24   rental vehicle which was signed by Circuit Court Judge Angela

25   Eaves of Harford County Circuit Court. When Ms. Thompson had

arrived in Harford County, the search warrant was executed on
her and her vehicle. The vehicle was searched and recovered
were two packages containing bulk amount of cocaine. Again,
Your Honor, the defendant's fingerprints were found on one of
those packages as well.

Through the investigation the investigators were
able to confirm that between January of 2019 and May of 2020,
Ms. Thompson took a total of eight trips to Tucson and
typically Mr. Durbin would travel to Tucson one day before in
order to secure payment or provide payment for the kilograms
of cocaine.  And once Ms. Thompson arrived in Tucson, she
would meet with the defendant, Mr. Anderson, and obtain from
the source of supply the cocaine and then travel back to
Harford County. Mr. Durbin would then take possession of the
rental vehicle and the supply of cocaine that was delivered by
Ms. Thompson that had been provided to her by Mr. Anderson.

In summary, the investigators believed that between
January 2019 and May of 2020, Mr. Durbin and Ms. Thompson
purchased approximately 10 kilograms of cocaine from Mr.
Anderson.

That would be a factual summary, Your Honor, and now
I'll address the Government's position that the defendant is
both a danger and a risk of flight.

First, if we look at the legislative history of the
Bail Reform Act of 1984, it makes it clear that Congress

1    intended the phrase, quote, "safety of the community" language

2    which is utilized in 3142, was expected to be given a broad

3    construction. In fact, they said in the congressional report,

4    the Senate Congressional Report number 225, the following:

5    Quote, "The reference to the safety of another person is

6    intended to cover the situation in which the safety of a

7    particular identifiable individual, perhaps a victim or

8    witness, is of concern. While the language referring to the

9    safety of the community refers to the danger that a defendant

10   may engage in criminal activity to the detriment of the

11   community. The committee intends the concern about safety be

12   given a broader construction than merely danger of harm

13   involving physical violence."

14          The risk that a defendant will continue to sell

15   narcotics, Your Honor, was repeatedly cited as an example of a

16   danger to, quote, "the safety of the community" end quote.

17          Also, the Fourth Circuit case of United States

18   versus Williams at 753 F.2d 329, a Fourth Circuit case in 1985

19   stated that it is well-known that drug trafficker is carried

20   on to an unusual degree by persons engaged in continuing

21   patterns of criminal activity. Persons charged with major drug

22   felonies are often in the business of importing or

23   distributing drugs and thus, because of the nature of the

24   criminal activity with which they are charged, they pose a

25   significant risk of pretrial recidivism.

1        And here, Your Honor, that's exactly what we have.

2    The defendant has not only been convicted of five felony

3    convictions including drugs, he's now yet charged again with

4    another felony drug trafficking crime.

5        With regard to risk of flight, the defendant's

6    proposed residence in Tucson, Arizona is a mere 60 miles from

7    Nogales, Sonora, Mexico.  He has committed multiple offenses

8    as the pretrial services report reflects while he was on

9    probation. He's facing as Your Honor has pointed out, a

10   significant term of imprisonment if convicted, indeed a

11   minimum mandatory sentence of at least ten years, and a

12   maximum of life imprisonment. The evidence is clear, Your

13   Honor, that he is both a danger and a risk of flight and

14   should be detained. And again, I would also reiterate what the

15   Court has said that there is a presumption in this case that

16   he should be detained. So unless the Court has any other

17   questions, I'll sit down. Thank you.

18        **THE COURT:**  Thank you. Ms. Abelson, I'll be more

19   than happy to hear from you.

20        **MS. ABELSON:**  Thank you, Your Honor. Before I begin,

21   I do just want to ask the Government if there was a wiretap in

22   this case. Was this a Title 3 investigation?

23        **MR. ROMANO:**  There was a wiretap in this case as

24   well, yes.

25        **MS. ABELSON:**  Your Honor, under Title 3 and I can

```
 1    pull up the section if you just -- I just did not -- Title 3
 2    requires that the Government disclose the affidavit and the
 3    supporting evidence to the defense prior to using it at any
 4    hearing at least ten days if they have -- unless there's good
 5    cause. The Government has not disclosed that information to
 6    me. Just give me one second and I can find it. It's 18 USC
 7    2518(i)-- I'm sorry, (9). I guess that must be a letter,
 8    although it's highlighted from a prior case.
 9              THE COURT:  2518?
10              MS. ABELSON:  2518.  I don't know if the Court has
11    the same code book as I do, it's on page 935.
12              The contents of any wire or electronic communication
13    intercepted pursuant to this chapter or evidence derived
14    therefrom shall not be received in evidence or otherwise
15    disclosed in any trial, hearing, or other proceeding in a
16    federal or state court unless each party not less than
17    ten days before the trial proceeding or hearing has been
18    furnished by the court order or accompanying application under
19    which the interception was authorized or approved. This
20    ten-day period may be waived by the judge if he finds it was
21    not possible to furnish the party with the above information
22    ten days before the hearing and that the party will not be
23    prejudiced by the delay.
24              And Your Honor, I would submit that before I even
25    get to my factual rebuttal of first what I've learned today
```

from Mr. Romano and also what I had prepared in advance of

this hearing, that Mr. Romano should not be permitted to rely

on that information without furnishing me the required

information, given how long it has been since Mr. Anderson's

initial appearance in Arizona at the end of July. There is no

justification for not providing the required information in

advance of this hearing.

**THE COURT:** Well, I don't know whether or not there

is no justification. Mr. Romano, do you want to --

**MR. ROMANO:** Your Honor, quite frankly, we didn't

rely on that and my recitation to the Court it was based on

the interception of packages, it was based on surveillance.

Your Honor did not hear, nor did I say anything with regard to

intercepted phone conversations referring to any intercepted

phone conversation by Mr. Durbin, Ms. Thompson, or Mr.

Anderson. So with all due respect, I don't believe that

there's any kind of violation at this point. Clearly once

discovery is provided, Ms. Abelson will be furnished with the

wiretap affidavits, the search warrants, and the relevant

discovery documents. But for purposes of this hearing, I would

respectfully say to the Court that the Court did not hear from

me, nor did I refer to any kind of intercepted conversation or

even make reference to a wiretap until Ms. Abelson asked me

just now, so --

**THE COURT:** Right, and I would note that during your

1  recitation of the proffered facts I didn't hear anything about
2  any interception so I didn't -- that was raised sort of for
3  the first time. I don't think the Government is even relying
4  upon any intercepted conversations.
5          **MS. ABELSON:**  Your Honor, I disagree.  That's the
6  only reason I knew that -- I mean, I can go through my notes
7  of what Mr. Romano said, but there were a number of places
8  where he said that detectives learned or detectives developed
9  information or his suggestion that there was obvious
10 surveillance that he talked about in May of 2020, but
11 otherwise as he calculated the quantity, it was based on
12 information that detectives developed over time. I mean, this
13 was how I figured it out, by listening to his facts.
14         **THE COURT:**  Well, I don't know whether or not
15 there's another source of that information other than the
16 wiretap and the Government has proffered that there is, that
17 they're not relying upon the wiretap information.  So I've got
18 to operate on accepting that.  And you've got no reason to
19 rebut it other than the fact that, you know, there are
20 references to sources of information, but it's represented to
21 the Court that those sources of information were not the
22 wiretap.
23         **MS. ABELSON:**  Okay. Thank you, Your Honor.
24         Your Honor, under the Bail Reform Act, the Court
25 must determine whether there are any conditions or combination

1    of conditions that can assure Mr. Anderson's appearance in

2    court and the safety of the community. And though the Court

3    noted and Mr. Romano noted that this is a case where there is

4    a presumption of detention, that rebuttable presumption as I

5    mentioned earlier, does not actually shift the burden of

6    persuasion.  It shifts the burden of production. And so I am

7    prepared in court to proffer evidence and provide some

8    additional documentary evidence that the Government has not

9    met its burden of persuasion under the factors outlined in the

10   Bail Reform Act.  The Government has to prove by clear and

11   convincing evidence that Mr. Anderson poses a danger to the

12   community or by a preponderance that he is a flight risk.

13             I want to start with the series of alternative

14   release plans that I have for Mr. Anderson because I think

15   that that should be sort of in the back of the Court's mind as

16   I go through the rest of the facts.

17             **THE COURT:**  That will rebut the presumption in favor

18   of detention?

19             **MS. ABELSON:**  Yes.

20             **THE COURT:**  Right.

21             **MS. ABELSON:**  Your Honor, our first line proposal is

22   the proposal that the pretrial services office in Arizona in

23   recommending Mr. Anderson's release while this case was

24   pending approved, which is release to the custody of his

25   mother, Antoinette Anderson who is on the phone today. She's

available for the Court's questioning and is prepared to take
on all of the responsibilities of being a third-party
custodian.

We also have in court today, Mr. Anderson's cousin,
Davonte Skinner who lives in Maryland. If the Court needs some
additional assurances or would prefer that Mr. Anderson reside
in Maryland while his case is pending, he also has a potential
location to live in this district.

The posture of this case, Your Honor, Mr. Anderson
is from Arizona. He's a life-long Tucson native. He was
arrested there. He had Rule 5 proceedings there. Pretrial
services recommended his release there. The magistrate judge
reviewed the evidence in the case, the standards under the
Bail Reform Act and ordered his release. The Government
appealed that order to Your Honor as it has the right to do.
That all occurred in July.

And so then Mr. Anderson was transferred to Maryland
and we had to wait some time before we could have this
hearing. Importantly, if the Court looks at the recommended
and ultimately ordered pretrial release conditions that
pretrial services in Arizona who would be supervising Mr.
Anderson should he be released to the custody of his mother in
Arizona, that they recommended -- they did not even recommend
the most restrictive conditions that are available. They did
not recommend electronic monitoring. They did not recommend

17

Nadine M. Gazic, RMR, CRR - Federal Official Court Reporter

1    even a curfew. They recommended the standard conditions, plus

2    a series of conditions related to substance abuse to which we

3    do not object, and that he be in the custody of his mother,

4    Antoinette Anderson.

5         Pretrial services in Arizona in the community where

6    Mr. Anderson resides believed that he should be released and

7    the judge there also agreed. We believe that those conditions

8    are the appropriate ones in this case. But should the Court

9    want additional conditions, Mr. Anderson is also willing to

10   submit to home detention and electronic home monitoring and

11   his family is also able to -- willing and able to post a

12   property bond on their home which is valued at approximately

13   $200,000.

14        Mr. Anderson is 43 years old. He's a father of four.

15   He has two adult biological children from a previous

16   relationship and a de facto stepchild from that relationship.

17   All of them are in college. He has a two-year-old son with his

18   wife, Tamika who is also on the phone today and she is

19   seven-months pregnant with their second son.

20        Prior to his arrest, Mr. Anderson and his wife

21   managed their own pest control company.  And Your Honor, I

22   apologize.  This is my first in-court proceeding since the

23   pandemic and I did not realize we wouldn't have access to the

24   Elmo. But I printed out the website from Mr. Anderson's pest

25   control company so that the Court could see, it's really --

it's quite comprehensive. It's very professional. And he had

an active business in Tucson. That's where his business is.

That's where his family is. His company is called Just Bugged

Out Pest Control. He's also on the board of a nonprofit called

My Brother's Keeper, My Brother's Keeper Club that organizes

food and clothing drives in his community.

He has over 200 relatives in Tucson between

siblings, nieces, nephews, cousins, his grandmother. His

entire community is in Tucson. He has very deep roots there.

And so while as a coincidence it may be close to Mexico, there

is no indication that Mr. Anderson would flee to Mexico just

because his roots are in Tucson. That's his community. And he

has very, very deep roots there.

And some courts have held that ties to the community

-- just because this was something that was raised in the

addendum from this court's pretrial services office -- that he

does not have strong ties to Maryland, he does have some ties

to Maryland. He has cousins here. But he doesn't --

**THE COURT:** With regard to the cousin -- I didn't

mean to cut you off, Ms. Abelson, but with regard to the

cousin, it's my understanding that he represented that he

does, indeed, have a criminal record, that he received a

probation before judgment for possession of marijuana and

Ecstasy in 2002 and a DUI that was nol-prossed; is that

correct?

          THE PRETRIAL OFFICER:  Your Honor, that is what --

          THE COURT:  You can be seated.

          THE PRETRIAL OFFICER:  That is what he told me.

          THE COURT:  Right.  And the next part I have is that
you investigated his criminal history and you found out that
that was not, indeed, the case.

          THE PRETRIAL OFFICER:  That's indeed the case, Your
Honor.

          THE COURT:  And indeed he has a conviction for
distribution and manufacturing of CDS; is that correct?

          THE PRETRIAL OFFICER:  That's correct, Your Honor.

          THE COURT:  And he's got a possession not marijuana;
is that correct?

          THE PRETRIAL OFFICER:  Yes, that is correct.

          THE COURT:  In 2002 and he also received a probation
before judgment in 1999.

          THE PRETRIAL OFFICER:  Yes, Your Honor.

          THE COURT:  And he was found guilty of -- was that
Mr. Skinner?

          THE PRETRIAL OFFICER:  That's correct, in Arizona.

          THE COURT:  So he had a 2018 conviction for DUI,
liquor, drugs, vapors which he did not reveal to you. Is that
correct?

          THE PRETRIAL OFFICER:  That's correct, Your Honor.

          THE COURT:  Thank you. Ms. Abelson?

1          **MS. ABELSON:**  Your Honor, Mr. Skinner is in court

2     today and is happy to answer questions.

3          **THE COURT:**  He's not an appropriate third-party

4     custodian. He didn't even tell the truth to the -- I presume

5     the probation officer is accurate, he didn't tell the truth

6     and I think it was knowing because there's no way that

7     somebody would not recall those series of convictions.

8          **MS. ABELSON:**  Your Honor, that actually was not even

9     the point that I was about to make.

10          **THE COURT:**  Oh, right.  I don't need to speak to him

11     because he's completely inappropriate.

12          **MS. ABELSON:**  Your Honor, my point is that the case

13     law says that Mr. Anderson is not required to have ties to

14     Maryland to prove that he's not a flight risk. He has to have

15     ties to a community from which he would not flee.

16          **THE COURT:**  Right, but his ties are criminal ties

17     here to Maryland.

18          **MS. ABELSON:**  But his ties are in Tucson.  That's

19     where we want him to be released to.

20          **THE COURT:**  Understood, but he was proposed as a

21     third-party custodian by the defense.

22          **MS. ABELSON:**  He was indeed as a third-party

23     custodian, but Your Honor our first line of release plan that

24     we think is the best plan is for Mr. Anderson to be released

25     to the custody of his mother in Arizona.

1          **THE COURT:**  And has she been vetted?  I didn't see

2     the report.

3          **THE PRETRIAL OFFICER:**  Yes, Your Honor. She was

4     originally vetted by the pretrial office in Arizona. I did run

5     her record again when I ran the records for the defendant's

6     wife and the defendant's father who also reside in the same

7     home. So while the defendant's mother does not have a criminal

8     record, the defendant's wife is currently on probation for

9     fraud-related charges and his dad also does have a criminal

10    record.

11         **THE COURT:**  Right, and they're all going to be in

12    the same household.

13         **THE PRETRIAL OFFICER:**  Correct.

14         **THE COURT:**  Right.  Go ahead, Ms. Abelson.

15         **MS. ABELSON:**  Your Honor, Mr. Anderson's mother who

16    is on the phone and available for the Court's questions should

17    you have them, has been an HR manager at Southern Arizona

18    Legal Aid in Tucson for 43 years. She was vetted and approved

19    by the pretrial services office in Arizona which found her to

20    be an appropriate third-party custodian. That was, in fact, a

21    condition that they recommended.  And those are -- while we

22    have looked for all sorts of options for the Court, that was

23    what was approved in Arizona. That is what we are proposing

24    today as our first line release plan.

25         Your Honor, the nature and circumstances of this offense

1    -- and I am just processing the information that Mr. Romano

2    gave me today, but I would note that Mr. Romano spent a lot of

3    time discussing the fact that selling narcotics could be a

4    danger to the community. I'm not contesting that. But the

5    reason that Mr. Romano spent so much time discussing that is

6    because this case does not involve any violence. There's no

7    allegation that Mr. -- there are firearms charges as to the

8    other defendants who live in Maryland. There are no firearms

9    charges as to Mr. Anderson and no allegations of any sort of

10   violence or weapons possession or anything related to Mr.

11   Anderson. And what the Government presumably has probable

12   cause to believe that Mr. Anderson committed a crime because

13   they got an indictment, but that is always the case at this

14   stage. It's always the case in every drug case that we would

15   be in exactly this situation. And the question is whether

16   there's something specific about this case or about Mr.

17   Anderson that would suggest a risk of non-appearance in court

18   or a risk that he would continue to pose some danger to the

19   community while on pretrial release. And as to Mr. Anderson,

20   there is not. There is no indication that he would even if he

21   did commit the offense with which he's charged, that he would

22   continue to commit any sort of criminal offense while on

23   pretrial supervision.

24           THE COURT:  How long was he on -- I know that he has

25   a conviction for the DUI in Arizona it looks like on

1  April 20th of 2018 and he was placed on 15 months probation.

2  Is that during the relative time of the drug conspiracy?

3          **MS. ABELSON:**  Your Honor, I don't have enough

4  information to answer that question today. I did not believe

5  so.

6          **THE COURT:**  Mr. Romano, any idea?

7          **MR. ROMANO:**  I'm sorry, Your Honor, which one --

8          **THE COURT:**  Well, the report it appears as though

9  that he was on -- and I'm talking about the September 3rd

10 report. On Page 5 it says that he was convicted of DUI,

11 liquor, drugs, vapor combination.  On March 28, 2018 he was

12 imprisoned for 10 days and then given 15 months probation. I

13 was not certain whether or not the probationary period of time

14 fell within the realm or close to the drug conspiracy.

15         **MR. ROMANO:**  Well, the package that was intercepted,

16 the first package that was intercepted that contained the

17 drugs that had Mr. Anderson's palm print was on May 17th of

18 2019.  So I think that's right during that same time period.

19         **THE COURT:**  Period.

20         **MR. ROMANO:**  It may be towards the end of it, but

21 it's certainly within --

22         **THE COURT:**  15 months of April 2018.

23         **MR. ROMANO:**  That's correct, Your Honor.

24         **THE COURT:**  Right.

25         **MS. ABELSON:**  Your Honor, Mr. Anderson does have a

criminal history and Mr. Romano highlighted some of the more serious convictions which are really quite old. In the last 14 years he has had -- I'm sorry, 13 years he has had just the DUI from 2018. The records suggest that he completed that probation successfully. I can't speak to that particular package because I just learned of it today, but even if that is true, it was at the tail end of that period. And I just don't think the Court has enough information in front of it today to determine that that would be a violation of Mr. Anderson's probation.

**THE COURT:** No, I'm not saying it's a violation. That would be something for another tribunal.

**MS. ABELSON:** Exactly.

**THE COURT:** What I'm saying is that the 15 -- if the records are accurate and he was on 15-months probation, he committed this narcotics offense within the time that he was already on a supervised release circumstance. And that I think weighs against Mr. Anderson not being a danger to the community. Because if I presume that he committed this offense while he was on probation, then that is a demonstration of his failure to comply with the terms and conditions of release.

**MS. ABELSON:** Your Honor, I don't think we have enough evidence today. Mr. Anderson enjoys the presumption of innocence at this stage and while the Government has proffered that information, they have not provided any information other

1    than that proffer on which the Court can make that judgment at

2    this point. And so I would just say --

3        **THE COURT:** Other than -- well, Ms. Abelson hang on

4    one second. I want to make sure I'm clear. It seems based

5    upon the probationary records, on the probation and pretrial

6    services records, I'm satisfied that he was on probation for

7    15 months. And I'm satisfied that the conviction arose out of

8    April 2018. And this offense occurred according to the

9    proffer, in May of 2019. So he would have been on -- I'm very

10   comfortable saying that he was on probation at the time the

11   alleged drug conspiracy occurred. And while I certainly

12   understand he's entitled to a presumption of innocence, of

13   course the release provisions indeed allow me to accept the

14   proffer of the Government as to the strengths of its case as

15   being true.

16       **MS. ABELSON:** Your Honor, I would just say I think

17   given the fact that there was a wiretap investigation in this

18   case and we have not seen any of that evidence, I think there

19   is -- and the Government has kept that even though they've had

20   two months to prepare for this hearing, when in normal

21   circumstances we would have had this hearing two days after

22   and they would have long produced that discovery.

23       **THE COURT:** Well, we wouldn't have had it two days

24   after because we would have had to get him here.

25       **MS. ABELSON:** Not necessarily, Your Honor and I

```
1       actually want to get to that point. Because we have even prior
2       to COVID had people where there were appeals from release
3       orders, we have done remote proceedings from the prior
4       district.  I don't know why that didn't happen in this case.
5       I didn't become involved until he arrived in Maryland and so I
6       don't know, but I do want to speak to that and I think that
7       that also goes to Mr. Anderson's compliance, ability to comply
8       with pretrial release conditions.
9             Your Honor, I would just say with respect to Mr.
10      Anderson's criminal history, while he does have some old
11      criminal history and the Government mentioned that, that he
12      had prior drug convictions from 25 years ago, in the last
13      14 years he has been a family man. He has been working at his
14      own business. He has had very limited interaction with the
15      criminal justice system. The criminal history that the Court
16      has looked at does not reflect who 43-year old Jack Anderson
17      is.
18            THE COURT:  Well, do we know the disposition on --
19      any update on the disposition of the assault?
20            MS. ABELSON:  Your Honor, I do actually.
21            THE COURT:  Oh, good.
22            MS. ABELSON:  That case has been dismissed.
23            THE COURT:  Okay, good.
24            MS. ABELSON:  And I have the order of dismissal on
25      that.
```

1          **THE COURT:**  Fair enough. I'll take your word on it.

2          **MS. ABELSON:**  Your Honor, Mr. Anderson is also at

3    high risk of complications from COVID.  He has high blood

4    pressure. He takes hydrochlorothiazide every day which is

5    blood pressure medication. It is -- hypertension is a

6    recognized risk factor for COVID from the CDC. And until

7    recently the Chesapeake Detention Facility has seemed to be

8    able to control the spread of COVID, there are signs that the

9    situation is deteriorating there. There have been seven new

10   confirmed cases amongst CDF detainees since Labor Day and

11   including two this week.  And we had to cancel this hearing

12   once because Mr. Anderson was potentially exposed to somebody

13   at the jail. And so while balancing all of these factors,

14   including the fact that pretrial services in Arizona believed

15   that he should be released and would be willing to supervise

16   him in the community, Mr. Anderson's COVID risk should also

17   weigh in favor of his release.

18          Now I want to get back to sort of the procedural

19   posture of how we got here today. Mr. Anderson had had an

20   unusual -- an unusually stark exposure to pretrial detention

21   and especially pretrial detention in the time of COVID because

22   of the procedural posture of this case. Like I said, I don't

23   know why we didn't have this remote appeal when Mr. Anderson

24   was still in Arizona, but it didn't happen that way. And so he

25   went through the marshal's transfer process. He's been in

multiple detention facilities. He's been quarantined multiple
times. He was brought to Baltimore.  He's been here for a
month waiting for this hearing and he knows exactly what he
would be coming back to if he were to violate his pretrial
detention. There is, you know, it's not hypothetical to him at
all. And so I think weighing all of those factors and
especially the fact that he has an appropriate third-party
custodian and he's willing to be on electronic monitoring and
his mother is willing to put up her house as collateral in
this case and pretrial services in Arizona believed that he
should be released and not even just released on the most
restrictive conditions, released on less than the most
restrictive conditions, plus the fact that there's no
allegation of violence in this case, all of those factors
weighing together we have rebutted the Government's
presumption and have shown that there are conditions that can
be fashioned to ensure both the safety of the community, Mr.
Anderson's compliance with pretrial release and his appearance
in court which I should note his family has the means to be
able to get him back and forth to Maryland if that's
necessary, but so many court proceedings are remote, that may
not even be necessary once he is back in Arizona. So for all
of those reasons, we believe that Mr. Anderson should be
released.

        **THE COURT:**  Very well, thank you. Mr. Romano, any

1    reply?

2         **MR. ROMANO:**  Just briefly, Your Honor. First off

3    with regard to Ms. Abelson characterizing his pest control

4    business as an active business, that was not the only active

5    business that Mr. Anderson was conducting. He was intimately

6    involved in the trafficking of narcotics. His fingerprints are

7    on those packages.

8         She says there's no violence associated with this

9    case. Well, we know that in any drug organization the

10   potential for violence is there. That's why Congress enacted

11   the Bail Reform Act in the fashion that it did. And in Mr.

12   Anderson's own particular case -- and this I find quite

13   incredible that the pretrial services office in Arizona can

14   write the following on Page 5: Pretrial services believes the

15   defendant poses a risk of danger to the community based on his

16   past criminal history to include five prior felony convictions

17   for drugs, weapons, and other violent offenses. And then to go

18   on and say well yeah, he's got five prior convictions for

19   drugs, weapons, and other violent offenses but we're going to

20   let him post a $500 bond and let him live with mom.  And when

21   you look at his record and you talk about violence, he has

22   convictions for weapons. He has convictions for robbery and I

23   don't care what age they were committed, they were committed.

24   Just like his track record with regard to pretrial release.

25   Going back to the very beginning in April of '95 he was on

pretrial release or probation from a drug offense and then within two months, picks up another drug charge and that's depicted on pages 3 and 4.  Then when he's on probation presumably for both of those offenses, and then in 1997 -- he has a conviction for liquor, unlawful acts, whatever that is in Arizona.  And then on top of that in 1997 when he's on probation for that, he picks up a robbery charge and he's convicted of that. So to say that he's going to be compliant with pretrial release, I think that's a wish. His record shows what he's done and what he's about. I don't believe that they've rebutted that presumption. It's unfortunate that we live in a time of COVID, but that is not a basis to release somebody that is a danger to the community.  That is not a factor under 3142 and for the reasons that I previously addressed as well as these now, as well as the statute, I believe that he should be detained pending resolution of this case. Thank you.

THE COURT:  All right, thank you. Pending before the Court is a Government appeal of a previous release decision arising out of the District Court of Arizona. The Court examines the factors in 3553(a) -- I'm sorry, 3142(g) independently and de novo. I look at the nature and circumstances of the offense charged. They are quite serious. Indeed because of the amount of narcotics carrying a term of imprisonment if convicted of life with a minimum mandatory of

1   10 years, there is a rebuttable presumption favoring detention

2   based upon danger, as well as flight.

3           Clearly given the amount of narcotics involved, the

4   Court finds the nature and circumstances of the offense quite

5   serious.

6           As far as the weight of the evidence is concerned,

7   it is quite strong. In addition to the proffer of surveillance

8   and appropriate search warrants of various packages being

9   delivered both to and from Maryland, a handprint of the

10  defendant was found on at least two of the packages, one

11  containing a substantial amount of narcotics and another

12  containing a substantial amount of cash assets. As a result, I

13  believe the weight of the evidence is very significant against

14  the defendant.

15          As far as the history and characteristics of the

16  defendant, I certainly understand and hear the arguments of

17  counsel that he does come from an extended family, a large

18  family in Tucson. As I indicated earlier, the third-party

19  custodian that was proposed here in Maryland is completely

20  inappropriate based upon his lack of candor to the pretrial

21  services officer.  And while I certainly understand that

22  Arizona found his mother to be an appropriate third-party

23  custodian, the current living arrangement with his father who

24  has been convicted on multiple occasions, as well as the

25  convictions of his wife lead this Court to believe that his

1    mother is not an appropriate third-party custodian.

2         Also very troubling to the Court is the fact that

3    the defendant in all likelihood was on some sort of probation

4    at the time that he committed the instant offense. And the

5    instant offense involved not just day-to-day and individual

6    street sales, but if indeed true, the defendant was part of a

7    large mid-level supply that would be eventually -- a supply of

8    cocaine that would eventually be distributed to individuals

9    for street sales and individuals for consumption.

10        I will note that and I will certainly recognize that

11   the defendant does have a criminal history that is over a

12   decade in some instances, over a decade old. However, those

13   convictions are serious and those convictions and commission

14   of those offenses occurred in many instances while the

15   defendant was already on probation at the time that they -- on

16   probation at the time that they were secured. Based upon these

17   reasons, the Court is extraordinarily troubled and has found

18   and has determined that the defendant has not overcome the

19   rebuttable presumption.

20        I note and I think the Government appropriately

21   pointed out, the report in and of itself from Arizona

22   recognizes that the defendant posed a danger to the community.

23   And I find that representation somewhat troubling and I simply

24   cannot reconcile the recognition of the danger posed, as well

25   as the risks of nonappearance with the recommendation made to

1   release the defendant. So for these reasons I don't believe

2   the rebuttable presumption has been overcome and the defendant

3   will remain detained.

4           Counsel, is there anything else that we can

5   productively handle before we conclude?

6           **MR. ROMANO:**  Your Honor, I don't know -- I'm sorry,

7   I almost stood up.  I apologize, Your Honor, it's just a

8   reflex -- whether we would want to conduct his arraignment?

9   I'm not sure he's had one. We're here. He's named in Count I

10  of the indictment. I believe if defense counsel and the

11  defendant are willing to go forward, we could do that today.

12  Other than that, the Government has nothing else.

13          **MS. ABELSON:**  Your Honor, I have no objection to

14  doing an arraignment. I do have to discuss that with Mr.

15  Anderson and so could we have a moment with the husher?

16          **THE COURT:**  Sure.  I need the noise button on.  Can

17  we get that on?

18          **(Defendant and his counsel confer.)**

19          **THE PRETRIAL OFFICER:**  Your Honor, can I be excused

20  for the arraignment part?  I have to be in another proceeding.

21          **THE COURT:**  Goodbye.

22          **(Helen Domico, the pretrial officer is excused.)**

23          **MS. ABELSON:**  Your Honor, we're ready to proceed.

24          **THE COURT:**  All right, very well.  Sir, why don't

25  you raise your right hand.

1          **THE CLERK:** Sir, please raise your right hand.

2          **(Defendant sworn.)**

3          **THE CLERK:** Sir, you may place your hand down. Please

4     state your full name for the record.

5          **THE DEFENDANT:** Jack Anderson, IV.

6          **THE CLERK:** And what is your age?

7          **THE DEFENDANT:** 43 years old.

8          **THE CLERK:** And in what year were you born?

9          **THE DEFENDANT:** 1976.

10         **THE CLERK:** Have you been furnished with a copy of

11    the indictment of the United States Attorney?

12         **THE DEFENDANT:** As of now, yes.

13         **THE CLERK:** And have you read the indictment?

14         **THE DEFENDANT:** No.

15         **THE COURT:** You have not read the indictment?

16         **THE DEFENDANT:** First time I'm seeing it.

17         **THE COURT:** Okay.

18         **MS. ABELSON:** Your Honor, we discussed the

19    indictment.  He hasn't had a way to actually review it in a

20    paper copy up until this point.

21         **THE COURT:** Okay, would you like to review the

22    indictment with him or do you wish to have it at another time?

23         **MS. ABELSON:** Your Honor, we can -- yes, if you just

24    -- is there a way to put on the husher?

25         **THE COURT:** I'm sorry?

1    **MS. ABELSON:**  Is there a way to put on the noise

2    machine, the husher?

3           **THE COURT:**  I don't know. Right now we're

4    technologically challenged.

5              **(Defendant conferred with his counsel.)**

6           **MS. ABELSON:**  Your Honor, we're ready to proceed.

7           **THE COURT:**  All right, very good.

8           **THE CLERK:** Will the defendant please raise your

9    right hand.

10             **(Defendant sworn.)**

11          **THE CLERK:** Sir, you may place your hand down and

12   please state your full name for the record.

13             **THE DEFENDANT:** Jack Anderson, IV.

14          **THE CLERK:**  And what is your age?

15          **THE DEFENDANT:**  43 years old.

16          **THE CLERK:** And in what year were you born?

17          **THE DEFENDANT:**  1976.

18          **THE CLERK:**  Have you been furnished with a copy of

19   the indictment of the United States Attorney?

20          **THE DEFENDANT:**  Yes.

21          **THE CLERK:**  And have you read the indictment?

22          **THE DEFENDANT:**  Yes.

23          **THE CLERK:**  Do you understand the charges placed

24   against you?

25             **THE DEFENDANT:**  Yes.

1          THE CLERK:  As counsel for the defendant, are you

2     satisfied that the defendant understands the charges against

3     him?

4          THE DEFENDANT:  Yes.

5          THE CLERK:  And what is your plea at this time?

6          THE DEFENDANT:  Not guilty.

7          THE CLERK: Not guilty?

8          THE DEFENDANT:  Yes.

9          THE CLERK: Okay, thank you.

10          THE COURT:  Okay, Counsel, is there anything else?

11          MR. ROMANO:  No, Your Honor. Thank you.

12          MS. ABELSON:  No, Your Honor.

13          THE COURT:  Okay, thank you very much.

14          **(Proceeding concluded at 12:14 p.m.)**

15

16

17

18

19

20

21

22

23

24

25

1    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5         I, Nadine M. Gazic, a Certified Realtime Reporter

6    and Registered Merit Reporter, in and for the United States

7    District Court for the District of Maryland, do hereby

8    certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9    true and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14         Dated this 20th day of October, 2020.

15

16

17   _____

18         NADINE M. GAZIC, CRR, RMR

19         FEDERAL OFFICIAL COURT REPORTER

20

21

22

23

24

25

**$**

**$200,000** [1] - 18:13
**$500** [1] - 30:20
**$82,300** [1] - 7:15

**'**

**'95** [1] - 30:25

**1**

**1** [2] - 1:7, 9:22
**10** [4] - 4:9, 10:19, 24:12, 32:1
**1003** [4] - 5:14, 5:18, 6:3, 6:19
**101** [1] - 1:24
**10th** [1] - 9:19
**12:14** [1] - 37:14
**12th** [1] - 9:22
**13** [1] - 25:3
**14** [2] - 25:3, 27:13
**15** [5] - 24:1, 24:12, 24:22, 25:14, 26:7
**15-months** [1] - 25:15
**17th** [2] - 5:7, 24:17
**18** [1] - 13:6
**1976** [2] - 35:9, 36:17
**1984** [1] - 10:25
**1985** [1] - 11:18
**1997** [2] - 31:4, 31:6
**1999** [1] - 20:16
**1B** [2] - 5:14, 6:19

**2**

**200** [1] - 19:7
**2002** [2] - 19:24, 20:15
**2018** [6] - 20:21, 24:1, 24:11, 24:22, 25:4, 26:8
**2019** [5] - 5:7, 10:7, 10:18, 24:18, 26:9
**2020** [7] - 1:7, 6:15, 7:20, 10:7, 10:18, 15:10, 38:14
**20th** [2] - 24:1, 38:14
**21201** [1] - 1:25
**225** [1] - 11:4
**22nd** [1] - 6:15
**25** [1] - 27:12
**2518** [2] - 13:9, 13:10
**2518(i** [1] - 13:7
**28** [2] - 24:11, 38:8

**3**

**3** [5] - 7:11, 12:22, 12:25, 13:1, 31:3

**3142** [2] - 11:2, 31:14
**3142(g** [1] - 31:21
**329** [1] - 11:18
**3553(a** [1] - 31:21
**3rd** [1] - 24:9

**4**

**4** [2] - 7:17, 31:3
**410-962-4753** [1] - 1:25
**43** [4] - 18:14, 22:18, 35:7, 36:15
**43-year** [1] - 27:16
**4:40** [1] - 5:15
**4th** [1] - 1:24

**5**

**5** [3] - 17:11, 24:10, 30:14

**6**

**60** [1] - 12:6
**6:30** [1] - 8:24

**7**

**7** [1] - 9:19
**753** [2] - 11:18, 38:8
**7601** [2] - 6:5, 6:10
**7661** [2] - 6:9, 6:20
**7B** [1] - 1:8
**7th** [1] - 7:20

**8**

**8:25** [1] - 9:7
**8th** [1] - 7:23

**9**

**9)** [1] - 13:7
**935** [1] - 13:11
**9:15** [1] - 7:23
**9th** [1] - 8:16

**A**

**Abelson** [13] - 1:18, 2:14, 3:20, 3:22, 4:19, 12:18, 14:18, 14:23, 19:20, 20:25, 22:14, 26:3, 30:3
**ABELSON** [37] - 2:13, 2:18, 2:22, 2:25, 3:3, 3:21, 4:21, 12:20, 12:25, 13:10, 15:5, 15:23, 16:19, 16:21, 21:1, 21:8, 21:12, 21:18, 21:22, 22:15, 24:3, 24:25, 25:13, 25:22, 26:16, 26:25, 27:20, 27:22, 27:24, 28:2, 34:13, 34:23, 35:18, 35:23, 36:1, 36:6, 37:12
**Aberdeen** [3] - 5:10, 5:14, 5:21
**ability** [1] - 27:7
**able** [5] - 10:7, 18:11, 28:8, 29:20
**Ableson** [1] - 2:12
**above-entitled** [1] - 38:10
**abuse** [1] - 18:2
**accept** [1] - 26:13
**accepting** [1] - 15:18
**access** [1] - 18:23
**accompanying** [1] - 13:18
**according** [1] - 26:8
**accurate** [2] - 4:15, 21:5, 25:15
**Act** [6] - 4:22, 10:25, 15:24, 16:10, 17:14, 30:11
**active** [2] - 19:2, 30:4
**activity** [3] - 11:10, 11:21, 11:24
**acts** [1] - 31:5
**addendum** [1] - 19:16
**addition** [1] - 32:7
**additional** [3] - 16:8, 17:6, 18:9
**address** [5] - 5:14, 6:2, 6:19, 6:22, 10:22
**addressed** [3] - 6:2, 6:20, 31:15
**adult** [1] - 18:15
**advance** [2] - 14:1, 14:7
**advised** [1] - 7:16
**affidavit** [1] - 13:2
**affidavits** [1] - 14:19
**afternoon** [1] - 8:18
**age** [3] - 30:23, 35:6, 36:14
**agent's** [1] - 7:13
**agents** [1] - 7:16
**ago** [1] - 27:12
**agreed** [1] - 18:7
**ahead** [1] - 22:14
**Aid** [1] - 22:18
**airport** [2] - 8:10, 9:2
**alert** [2] - 7:5, 7:6
**allegation** [2] - 23:7, 29:14
**allegations** [1] - 23:9

**alleged** [1] - 26:11
**allow** [1] - 26:13
**almost** [1] - 34:7
**alternative** [1] - 16:13
**America** [2] - 2:6, 3:14
**AMERICA** [1] - 1:3
**amount** [8] - 7:15, 7:16, 9:5, 10:3, 31:24, 32:3, 32:11, 32:12
**AND** [1] - 1:9
**Anderson** [53] - 2:6, 2:14, 2:17, 2:18, 3:11, 3:14, 3:22, 3:24, 6:9, 6:20, 8:7, 8:20, 8:22, 9:8, 9:9, 9:13, 10:12, 10:16, 10:20, 14:16, 16:11, 16:14, 16:25, 17:6, 17:9, 17:17, 17:22, 18:4, 18:6, 18:9, 18:14, 18:20, 19:11, 21:13, 21:24, 23:9, 23:11, 23:12, 23:17, 23:19, 24:25, 25:18, 25:23, 27:16, 28:2, 28:12, 28:19, 28:23, 29:23, 30:5, 34:15, 35:5, 36:13
**ANDERSON** [1] - 1:5
**Anderson's** [14] - 5:8, 14:4, 16:1, 16:23, 17:4, 18:24, 22:15, 24:17, 25:10, 27:7, 27:10, 28:16, 29:18, 30:12
**Angela** [1] - 9:24
**Anne** [1] - 7:2
**answer** [2] - 21:2, 24:4
**Antoinette** [2] - 16:25, 18:4
**Apartment** [2] - 5:14, 6:19
**apartment** [1] - 5:21
**apologize** [2] - 18:22, 34:7
**appeal** [6] - 3:18, 4:3, 4:18, 28:23, 31:19
**appealed** [1] - 17:15
**appeals** [1] - 27:2
**appearance** [5] - 4:14, 14:5, 16:1, 23:17, 29:18
**application** [1] - 13:18
**applied** [1] - 7:6
**appropriate** [8] - 9:5, 18:8, 21:3, 22:20, 29:7, 32:8, 32:22, 33:1
**appropriately** [1] -

33:20
**approved** [4] - 13:19, 16:24, 22:18, 22:23
**April** [4] - 24:1, 24:22, 26:8, 30:25
**arguments** [1] - 32:16
**arising** [1] - 31:20
**Arizona** [36] - 4:5, 5:10, 6:5, 6:17, 7:18, 7:23, 8:1, 8:6, 8:23, 9:1, 9:7, 9:10, 9:12, 12:6, 14:5, 16:22, 17:10, 17:21, 17:23, 18:5, 20:20, 21:25, 22:4, 22:17, 22:19, 22:23, 23:25, 28:14, 28:24, 29:10, 29:22, 30:13, 31:6, 31:20, 32:22, 33:21
**arose** [1] - 26:7
**ARRAIGNMENT** [1] - 1:9
**arraignment** [3] - 34:8, 34:14, 34:20
**arrangement** [1] - 32:23
**arrest** [1] - 18:20
**arrested** [1] - 17:11
**arrived** [7] - 3:9, 3:11, 9:13, 9:21, 10:1, 10:11, 27:5
**arriving** [3] - 7:23, 8:11, 8:17
**Arundel** [1] - 7:2
**assault** [1] - 27:19
**assets** [1] - 32:12
**Assistant** [5] - 1:15, 1:16, 2:8, 2:9, 3:17
**associated** [1] - 30:8
**assuming** [1] - 3:5
**assurances** [1] - 17:6
**assure** [2] - 4:13, 16:1
**Attorney** [7] - 1:15, 1:16, 2:8, 2:9, 3:17, 35:11, 36:19
**authorized** [1] - 13:19
**available** [3] - 17:1, 17:24, 22:16
**await** [1] - 3:1
**awaiting** [1] - 3:3

**B**

**Bail** [6] - 4:22, 10:25, 15:24, 16:10, 17:14, 30:11
**balancing** [1] - 28:13
**Baltimore** [3] - 1:8, 1:25, 29:2
**based** [1] - 4:5, 4:7,

7:13, 14:11, 14:12, 15:11, 26:4, 30:15, 32:2, 32:20, 33:16
**basis** [1] - 31:12
**bear** [1] - 4:22
**bears** [1] - 4:23
**Beats** [1] - 7:11
**become** [1] - 27:5
**BEFORE** [1] - 1:11
**began** [1] - 8:22
**begin** [1] - 12:20
**beginning** [1] - 30:25
**behalf** [2] - 2:14, 3:22
**believes** [1] - 30:14
**belongings** [1] - 9:20
**best** [1] - 21:24
**between** [3] - 10:7, 10:17, 19:7
**biological** [1] - 18:15
**black** [1] - 5:19
**blood** [2] - 28:3, 28:5
**board** [1] - 19:4
**bond** [2] - 18:12, 30:20
**book** [1] - 13:11
**booked** [1] - 8:16
**born** [2] - 35:8, 36:16
**box** [2] - 7:11
**brief** [3] - 8:4, 8:8, 9:17
**briefly** [1] - 30:2
**broad** [1] - 11:2
**broader** [1] - 11:12
**Brother's** [2] - 19:5
**brought** [1] - 29:2
**Bugged** [1] - 19:3
**building** [2] - 2:15, 2:22
**bulk** [1] - 10:3
**burden** [6] - 4:19, 4:22, 4:23, 16:5, 16:6, 16:9
**business** [7] - 11:22, 19:2, 27:14, 30:4, 30:5
**button** [1] - 34:16
**BWI** [1] - 9:2

## C

**calculated** [1] - 15:11
**cancel** [1] - 28:11
**candor** [1] - 32:20
**cannot** [1] - 33:24
**Cara** [1] - 5:19
**care** [1] - 30:23
**carried** [2] - 5:17, 11:19
**carrier** [1] - 5:15

**carrying** [2] - 5:20, 31:24
**case** [36] - 2:3, 3:11, 3:19, 4:7, 5:5, 8:13, 11:17, 11:18, 12:15, 12:22, 12:23, 13:8, 16:3, 16:23, 17:7, 17:9, 17:13, 18:8, 20:6, 20:7, 21:12, 23:6, 23:13, 23:14, 23:16, 26:14, 26:18, 27:4, 27:22, 28:22, 29:10, 29:14, 30:9, 30:12, 31:17
**CASE** [1] - 1:4
**Case** [2] - 2:7, 3:15
**cases** [1] - 28:10
**cash** [1] - 32:12
**CDC** [1] - 28:6
**CDF** [1] - 28:10
**CDS** [1] - 20:10
**certain** [1] - 24:13
**certainly** [6] - 3:13, 24:21, 26:11, 32:16, 32:21, 33:10
**CERTIFICATE** [1] - 38:1
**certified** [1] - 7:3
**Certified** [1] - 38:5
**certify** [1] - 38:8
**challenged** [1] - 36:4
**chapter** [1] - 13:13
**characteristics** [1] - 32:15
**characterizing** [1] - 30:3
**charge** [3] - 5:4, 31:2, 31:7
**charged** [5] - 11:21, 11:24, 12:3, 23:21, 31:23
**charges** [6] - 4:7, 22:9, 23:7, 23:9, 36:23, 37:2
**Che** [4] - 5:8, 6:18, 7:21, 8:2
**check** [1] - 8:4
**Chesapeake** [1] - 28:7
**Chevy** [1] - 9:16
**children** [1] - 18:15
**Christopher** [3] - 1:15, 2:8, 3:16
**Circuit** [4] - 9:24, 9:25, 11:17, 11:18
**circumstance** [1] - 25:17
**circumstances** [4] - 22:25, 26:21, 31:23, 32:4
**cited** [1] - 11:15

**clear** [4] - 10:25, 12:12, 16:10, 26:4
**clearly** [2] - 14:17, 32:3
**CLERK** [18] - 3:8, 35:1, 35:3, 35:6, 35:8, 35:10, 35:13, 36:8, 36:11, 36:14, 36:16, 36:18, 36:21, 36:23, 37:1, 37:5, 37:7, 37:9
**close** [2] - 19:10, 24:14
**clothing** [1] - 19:6
**Club** [1] - 19:5
**co** [7] - 5:8, 5:16, 5:20, 6:18, 7:21, 8:2, 8:13
**co-defendant** [7] - 5:8, 5:16, 5:20, 6:18, 7:21, 8:2, 8:13
**cocaine** [12] - 5:9, 6:7, 6:14, 7:17, 8:22, 9:5, 10:3, 10:11, 10:13, 10:15, 10:19, 33:8
**code** [1] - 13:11
**coincidence** [1] - 19:10
**collateral** [1] - 29:9
**college** [1] - 18:17
**combination** [2] - 15:25, 24:11
**combinations** [1] - 4:13
**come-up** [1] - 2:21
**comfortable** [1] - 26:10
**coming** [1] - 29:4
**commission** [1] - 33:13
**commit** [2] - 23:21, 23:22
**committed** [7] - 12:7, 23:12, 25:16, 25:19, 30:23, 33:4
**committee** [1] - 11:11
**communicated** [1] - 9:6
**communication** [1] - 13:12
**community** [21] - 4:14, 11:1, 11:9, 11:11, 11:16, 16:2, 16:12, 18:5, 19:6, 19:9, 19:12, 19:14, 21:15, 23:4, 23:19, 25:19, 28:16, 29:17, 30:15, 31:13, 33:22
**company** [3] - 18:21, 18:25, 19:3
**completed** [1] - 25:4

**completely** [2] - 21:11, 32:19
**compliance** [2] - 27:7, 29:18
**compliant** [1] - 31:8
**complications** [1] - 28:3
**comply** [2] - 25:21, 27:7
**comprehensive** [1] - 19:1
**concern** [2] - 11:8, 11:11
**concerned** [1] - 32:6
**conclude** [1] - 34:5
**concluded** [1] - 37:14
**condition** [1] - 22:21
**conditions** [15] - 4:12, 4:13, 15:25, 16:1, 17:20, 17:24, 18:1, 18:2, 18:7, 18:9, 25:21, 27:8, 29:12, 29:13, 29:16
**conduct** [1] - 34:8
**conducted** [2] - 5:6, 7:4
**conducting** [1] - 30:5
**confer** [1] - 34:18
**Conference** [1] - 38:12
**conferred** [1] - 36:5
**confirm** [1] - 10:7
**confirmed** [1] - 28:10
**conformance** [1] - 38:11
**Congress** [2] - 10:25, 30:10
**congressional** [1] - 11:3
**Congressional** [1] - 11:4
**conjunction** [1] - 7:1
**consistent** [1] - 7:14
**conspiracy** [3] - 24:2, 24:14, 26:11
**construction** [2] - 11:3, 11:12
**consumption** [1] - 33:9
**contact** [3] - 5:16, 9:3, 9:16
**contacted** [1] - 7:15
**contained** [2] - 6:14, 7:10, 24:16
**containing** [4] - 5:12, 10:3, 32:11, 32:12
**contains** [1] - 4:8
**contents** [1] - 13:12
**contesting** [1] - 23:4
**continue** [3] - 11:14,

23:18, 23:22
**continuing** [1] - 11:20
**control** [4] - 18:21, 18:25, 28:8, 30:3
**Control** [1] - 19:4
**conversation** [2] - 14:15, 14:22
**conversations** [2] - 14:14, 15:4
**convicted** [6] - 12:2, 12:10, 24:10, 31:8, 31:25, 32:24
**conviction** [5] - 20:9, 20:21, 23:25, 26:7, 31:5
**convictions** [11] - 12:3, 21:7, 25:2, 27:12, 30:16, 30:18, 30:22, 32:25, 33:13
**convincing** [1] - 16:11
**copy** [3] - 35:10, 35:20, 36:18
**correct** [12] - 4:20, 19:25, 20:10, 20:11, 20:13, 20:14, 20:20, 20:23, 20:24, 22:13, 24:23, 38:9
**Coulson** [1] - 7:8
**Counsel** [1] - 37:10
**counsel** [6] - 32:17, 34:4, 34:10, 34:18, 36:5, 37:1
**count** [1] - 4:8
**Count** [1] - 34:9
**country** [1] - 8:9
**County** [9] - 5:6, 5:10, 5:25, 7:2, 7:24, 9:22, 9:25, 10:1, 10:14
**course** [1] - 26:13
**COURT** [65] - 1:1, 2:2, 2:11, 2:17, 2:19, 2:24, 3:1, 3:4, 3:10, 3:20, 3:24, 4:2, 4:17, 4:25, 12:18, 13:9, 14:8, 14:25, 15:14, 16:17, 16:20, 19:19, 20:2, 20:4, 20:9, 20:12, 20:15, 20:18, 20:21, 20:25, 21:3, 21:10, 21:16, 21:20, 22:1, 22:11, 22:14, 23:24, 24:6, 24:8, 24:19, 24:22, 24:24, 25:11, 25:14, 26:3, 26:23, 27:18, 27:21, 27:23, 28:1, 29:25, 31:18, 34:16, 34:21, 34:24, 35:15, 35:17, 35:21, 35:25, 36:3, 36:7, 37:10, 37:13,

38:19
**court** [10] - 13:16, 13:18, 16:2, 16:7, 17:4, 18:22, 21:1, 23:17, 29:19, 29:21
**Court** [31] - 1:24, 4:4, 5:3, 5:25, 9:24, 9:25, 12:15, 12:16, 13:10, 14:11, 14:21, 15:21, 15:24, 16:2, 17:5, 17:19, 18:8, 18:25, 22:22, 25:8, 26:1, 27:15, 31:19, 31:20, 32:4, 32:25, 33:2, 33:17, 38:7
**court's** [1] - 19:16
**Court's** [3] - 16:15, 17:1, 22:16
**Courtroom** [1] - 1:8
**courtroom** [3] - 2:25, 3:8, 3:23
**courts** [1] - 19:14
**cousin** [3] - 17:4, 19:19, 19:21
**cousins** [2] - 19:8, 19:18
**cover** [1] - 11:6
**COVID** [7] - 27:2, 28:3, 28:6, 28:8, 28:16, 28:21, 31:12
**crime** [2] - 12:4, 23:12
**CRIMINAL** [1] - 1:4
**criminal** [16] - 11:10, 11:21, 11:24, 19:22, 20:5, 21:16, 22:7, 22:9, 23:22, 25:1, 27:10, 27:11, 27:15, 30:16, 33:11
**Criminal** [2] - 2:7, 3:15
**CRR** [2] - 1:23, 38:18
**curfew** [1] - 18:1
**currency** [2] - 7:12, 7:15
**current** [1] - 32:23
**custodian** [9] - 17:3, 21:4, 21:21, 21:23, 22:20, 29:8, 32:19, 32:23, 33:1
**custody** [4] - 16:24, 17:22, 18:3, 21:25
**cut** [1] - 19:20

## D

**dad** [1] - 22:9
**danger** [14] - 10:23, 11:9, 11:12, 11:16, 12:13, 16:11, 23:4, 23:18, 25:18, 30:15, 31:13, 32:2, 33:22,
33:24
**Dated** [1] - 38:14
**Davonte** [1] - 17:5
**day-to-day** [1] - 33:5
**days** [6] - 13:4, 13:17, 13:22, 24:12, 26:21, 26:23
**de** [3] - 4:18, 18:16, 31:22
**De** [1] - 6:17
**DEA** [1] - 7:16
**decade** [2] - 33:12
**decision** [1] - 31:19
**deep** [2] - 19:9, 19:13
**Defendant** [7] - 1:5, 1:17, 3:9, 34:18, 35:2, 36:5, 36:10
**DEFENDANT** [16] - 4:1, 35:5, 35:7, 35:9, 35:12, 35:14, 35:16, 36:13, 36:15, 36:17, 36:20, 36:22, 36:25, 37:4, 37:6, 37:8
**defendant** [34] - 2:18, 4:4, 4:14, 5:8, 5:16, 5:20, 6:9, 6:18, 7:21, 8:2, 8:7, 8:13, 8:20, 10:12, 10:22, 11:9, 11:14, 12:2, 30:15, 32:10, 32:14, 32:16, 33:3, 33:6, 33:11, 33:15, 33:18, 33:22, 34:1, 34:2, 34:11, 36:8, 37:1, 37:2
**defendant's** [7] - 6:13, 10:4, 12:5, 22:5, 22:6, 22:7, 22:8
**defendants** [1] - 23:8
**Defender** [1] - 1:19
**defense** [4] - 4:19, 13:3, 21:21, 34:10
**degree** [1] - 11:20
**delay** [1] - 13:23
**delivered** [3] - 5:13, 10:15, 32:9
**demonstration** [1] - 25:20
**depicted** [1] - 31:3
**depiction** [1] - 4:15
**derived** [1] - 13:13
**designated** [1] - 8:11
**detained** [5] - 5:24, 12:14, 12:16, 31:16, 34:3
**detainees** [1] - 28:10
**detection** [1] - 7:3
**detective** [1] - 7:2
**detective's** [1] - 7:2
**detectives** [19] - 5:12, 5:15, 5:17, 5:23, 6:8,

6:16, 7:10, 7:15, 7:21, 7:24, 7:25, 8:1, 8:11, 8:23, 9:3, 9:8, 15:8, 15:12
**detention** [11] - 3:18, 4:7, 4:12, 16:4, 16:18, 18:10, 28:20, 28:21, 29:1, 29:5, 32:1
**Detention** [1] - 28:7
**DETENTION** [1] - 1:9
**deteriorating** [1] - 28:9
**determine** [2] - 15:25, 25:9
**determined** [2] - 7:4, 33:18
**detriment** [1] - 11:10
**developed** [2] - 15:8, 15:12
**directed** [1] - 9:6
**disagree** [1] - 15:5
**disclose** [1] - 13:2
**disclosed** [2] - 13:5, 13:15
**discovery** [3] - 14:18, 14:20, 26:22
**discuss** [1] - 34:14
**discussed** [1] - 35:18
**discussing** [2] - 23:3, 23:5
**dismissal** [1] - 27:24
**dismissed** [1] - 27:22
**disposition** [2] - 27:18, 27:19
**distributed** [1] - 33:8
**distributing** [1] - 11:23
**distribution** [1] - 20:10
**district** [2] - 17:8, 27:4
**District** [5] - 4:4, 5:25, 31:20, 38:7
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**documentary** [1] - 16:8
**documents** [2] - 4:5, 14:20
**dog** [1] - 7:3
**Dogwood** [4] - 6:5, 6:9, 6:11, 6:21
**Domico** [2] - 1:21, 34:22
**done** [3] - 2:21, 27:3, 31:10
**DoubleTree** [2] - 9:12, 9:14
**down** [3] - 12:17, 35:3, 36:11

**Drive** [4] - 5:14, 5:18, 6:3, 6:19
**drive** [1] - 5:22
**driven** [2] - 8:9, 9:10
**drives** [1] - 19:6
**driveway** [1] - 8:10
**driving** [1] - 8:22
**drove** [1] - 9:11
**drug** [12] - 7:14, 11:19, 11:21, 12:4, 23:14, 24:2, 24:14, 26:11, 27:12, 30:9, 31:1, 31:2
**drugs** [7] - 11:23, 12:3, 20:22, 24:11, 24:17, 30:17, 30:19
**due** [1] - 14:16
**DUI** [5] - 19:24, 20:21, 23:25, 24:10, 25:4
**Durbin** [21] - 5:8, 5:16, 5:17, 6:18, 7:21, 8:2, 8:3, 8:5, 8:6, 8:8, 8:12, 8:14, 8:16, 8:18, 9:2, 9:5, 9:9, 10:9, 10:14, 10:18, 14:15
**during** [4] - 8:3, 14:25, 24:2, 24:18

## E

**East** [4] - 6:5, 6:9, 6:11, 6:21
**east** [1] - 8:22
**Eaves** [1] - 9:25
**Ecstasy** [1] - 19:24
**eight** [1] - 10:8
**electronic** [4] - 13:12, 17:25, 18:10, 29:8
**Elmo** [1] - 18:24
**enacted** [1] - 30:10
**end** [4] - 11:16, 14:5, 24:20, 25:7
**enforcement** [1] - 9:23
**engage** [1] - 11:10
**engaged** [1] - 11:20
**enjoys** [1] - 25:23
**ensure** [1] - 29:17
**entire** [1] - 19:9
**entitled** [2] - 26:12, 38:10
**equivalent** [1] - 7:17
**era** [1] - 3:4
**especially** [2] - 28:21, 29:7
**Esquire** [3] - 1:15, 1:16, 1:18
**establish** [1] - 4:19
**evening** [2] - 8:24, 9:7
**eventually** [2] - 33:7,

33:8
**evidence** [12] - 12:12, 13:3, 13:13, 13:14, 16:7, 16:8, 16:11, 17:13, 25:23, 26:18, 32:6, 32:13
**exactly** [4] - 12:1, 23:15, 25:13, 29:3
**examines** [1] - 31:21
**example** [1] - 11:15
**excused** [2] - 34:19, 34:22
**executed** [1] - 10:1
**expected** [1] - 11:2
**expecting** [1] - 2:19
**experience** [1] - 7:13
**explanation** [2] - 3:1, 3:3
**exposed** [1] - 28:12
**exposure** [1] - 28:20
**extended** [1] - 32:17
**extraordinarily** [1] - 33:17

## F

**F.2d** [1] - 11:18
**facilities** [1] - 29:1
**Facility** [1] - 28:7
**facing** [1] - 12:9
**fact** [9] - 11:3, 15:19, 22:20, 23:3, 26:17, 28:14, 29:7, 29:13, 33:2
**facto** [1] - 18:16
**factor** [2] - 28:6, 31:14
**factors** [5] - 16:9, 28:13, 29:6, 29:14, 31:21
**facts** [4] - 5:3, 15:1, 15:13, 16:16
**factual** [2] - 10:21, 13:25
**failure** [1] - 25:21
**fair** [1] - 28:1
**family** [6] - 18:11, 19:3, 27:13, 29:19, 32:17, 32:18
**far** [2] - 32:6, 32:15
**fashion** [2] - 7:12, 30:11
**fashioned** [1] - 29:17
**father** [3] - 18:14, 22:6, 32:23
**favor** [3] - 4:6, 16:17, 28:17
**favoring** [2] - 4:12, 32:1
**federal** [1] - 13:16
**FEDERAL** [1] - 38:19

**Federal** [2] - 1:19, 1:24
**fell** [1] - 24:14
**felonies** [1] - 11:22
**felony** [3] - 12:2, 12:4, 30:16
**female** [1] - 5:19
**fictitious** [1] - 6:2
**field** [1] - 6:6
**figured** [1] - 15:13
**filed** [1] - 4:8
**fingerprints** [2] - 10:4, 30:6
**firearms** [2] - 23:7, 23:8
**first** [11] - 5:3, 10:24, 13:25, 15:3, 16:21, 18:22, 21:23, 22:24, 24:16, 30:2, 35:16
**five** [3] - 12:2, 30:16, 30:18
**flee** [2] - 19:11, 21:15
**flew** [1] - 7:24
**flight** [7] - 8:17, 10:23, 12:5, 12:13, 16:12, 21:14, 32:2
**Floor** [1] - 1:24
**followed** [3] - 5:23, 8:2, 8:5
**following** [2] - 11:4, 30:14
**food** [1] - 19:6
**FOR** [1] - 1:1
**Force** [2] - 5:6, 8:1
**force** [1] - 5:7
**foregoing** [1] - 38:8
**formally** [1] - 3:10
**format** [1] - 38:11
**forth** [1] - 29:20
**forward** [2] - 7:19, 34:11
**four** [1] - 18:14
**Fourth** [2] - 11:17, 11:18
**frankly** [1] - 14:10
**fraud** [1] - 22:9
**fraud-related** [1] - 22:9
**front** [1] - 25:8
**full** [2] - 35:4, 36:12
**furnish** [1] - 13:21
**furnished** [4] - 13:18, 14:18, 35:10, 36:18
**furnishing** [1] - 14:3

## G

**GAZIC** [1] - 38:18
**Gazic** [2] - 1:23, 38:5
**GEORGE** [1] - 1:11

**given** [6] - 11:2, 11:12, 14:4, 24:12, 26:17, 32:3
**GLR-20-210** [3] - 1:4, 2:7, 3:15
**goodbye** [1] - 34:21
**Government** [18] - 4:3, 4:23, 12:21, 13:2, 13:5, 15:3, 15:16, 16:8, 16:10, 17:14, 23:11, 25:24, 26:14, 26:19, 27:11, 31:19, 33:20, 34:12
**Government's** [4] - 3:18, 4:18, 10:22, 29:15
**Grace** [1] - 6:17
**grandmother** [1] - 19:8
**guess** [1] - 13:7
**guilty** [2] - 20:18, 37:6, 37:7

## H

**half** [1] - 5:18
**half-hour** [1] - 5:18
**Hamilton** [3] - 1:16, 2:9, 3:17
**hand** [5] - 34:25, 35:1, 35:3, 36:9, 36:11
**handed** [1] - 5:16
**handle** [1] - 34:5
**handprint** [1] - 32:9
**hang** [1] - 26:3
**happy** [2] - 12:19, 21:2
**Harford** [8] - 5:6, 5:10, 5:25, 7:24, 9:22, 9:25, 10:1, 10:14
**harm** [1] - 11:12
**Havre** [1] - 6:17
**headphone** [2] - 7:11
**hear** [6] - 4:25, 12:19, 14:13, 14:21, 15:1, 32:16
**HEARING** [1] - 1:9
**hearing** [14] - 2:16, 4:3, 13:4, 13:15, 13:17, 13:22, 14:2, 14:7, 14:20, 17:19, 26:20, 26:21, 28:11, 29:3
**held** [2] - 19:14, 38:10
**Helen** [2] - 1:21, 34:22
**hereby** [1] - 38:7
**HIDTA** [1] - 7:25
**high** [1] - 28:3
**highlighted** [2] - 13:8, 25:1
**himself** [1] - 9:14

**history** [9] - 10:24, 20:5, 25:1, 27:10, 27:11, 27:15, 30:16, 32:15, 33:11
**home** [4] - 18:10, 18:12, 22:7
**Homes** [1] - 6:3
**Honor** [62] - 2:5, 2:13, 3:13, 3:21, 4:16, 4:21, 5:2, 7:19, 10:4, 10:21, 11:15, 12:1, 12:9, 12:13, 12:20, 12:25, 13:24, 14:10, 14:13, 15:5, 15:23, 15:24, 16:21, 17:9, 17:15, 18:21, 20:1, 20:8, 20:11, 20:17, 20:24, 21:1, 21:8, 21:12, 21:23, 22:3, 22:15, 22:25, 24:3, 24:7, 24:23, 24:25, 25:22, 26:16, 26:25, 27:9, 27:20, 28:2, 30:2, 34:6, 34:7, 34:13, 34:19, 34:23, 35:18, 35:23, 36:6, 37:11, 37:12
**HONORABLE** [1] - 1:11
**Hotel** [2] - 8:3, 8:15
**hotel** [4] - 8:4, 8:5, 9:16, 9:18
**hour** [1] - 5:18
**house** [1] - 29:9
**household** [1] - 22:12
**HR** [1] - 22:17
**husher** [3] - 34:15, 35:24, 36:2
**hydrochlorothiazide** [1] - 28:4
**hypertension** [1] - 28:5
**hypothetical** [1] - 29:5

## I

**I-10** [2] - 8:22, 8:25
**idea** [2] - 2:11, 24:6
**identifiable** [1] - 11:7
**identified** [1] - 5:19
**III** [1] - 1:11
**importantly** [1] - 17:19
**importing** [1] - 11:22
**imprisoned** [1] - 24:12
**imprisonment** [5] - 4:9, 4:10, 12:10, 12:12, 31:25
**IN** [1] - 1:1
**in-court** [1] - 18:22
**inappropriate** [2] -

21:11, 32:20
**include** [1] - 30:16
**including** [3] - 12:3, 28:11, 28:14
**incredible** [1] - 30:13
**indeed** [9] - 12:10, 19:22, 20:6, 20:7, 20:9, 21:22, 26:13, 31:24, 33:6
**independently** [1] - 31:22
**indicated** [2] - 4:2, 32:18
**indication** [2] - 19:11, 23:20
**indictment** [10] - 5:4, 23:13, 34:10, 35:11, 35:13, 35:15, 35:19, 35:22, 36:19, 36:21
**individual** [2] - 11:7, 33:5
**individuals** [2] - 33:8, 33:9
**information** [18] - 5:8, 6:24, 13:5, 13:21, 14:3, 14:4, 14:6, 15:9, 15:12, 15:15, 15:17, 15:20, 15:21, 23:1, 24:4, 25:8, 25:25
**initial** [1] - 14:5
**Inn** [2] - 8:5, 8:20
**innocence** [2] - 25:24, 26:12
**inside** [2] - 5:18, 7:11
**inspector** [2] - 7:1, 7:6
**inspectors** [1] - 6:24
**instances** [2] - 33:12, 33:14
**instant** [2] - 33:4, 33:5
**intended** [2] - 11:1, 11:6
**intends** [1] - 11:11
**interaction** [1] - 27:14
**intercepted** [7] - 13:13, 14:14, 14:22, 15:4, 24:15, 24:16
**interception** [3] - 13:19, 14:12, 15:2
**intimately** [1] - 30:5
**investigated** [1] - 20:5
**investigation** [4] - 5:5, 10:6, 12:22, 26:17
**investigators** [4] - 6:23, 8:21, 10:6, 10:17
**involve** [1] - 23:6
**involved** [4] - 27:5, 30:6, 32:3, 33:5
**involves** [1] - 5:5

**involving** [1] - 11:13
**itself** [1] - 33:21
**IV** [5] - 1:5, 2:6, 3:14, 35:5, 36:13

## J

**Jack** [8] - 2:6, 3:14, 6:20, 8:7, 8:20, 27:16, 35:5, 36:13
**JACK** [1] - 1:5
**jail** [1] - 28:13
**Jameka** [2] - 5:19, 8:12
**January** [2] - 6:15, 10:7, 10:18
**Jaron** [1] - 5:8
**Jason** [3] - 1:16, 2:9, 3:17
**Johnson** [2] - 6:5, 6:10
**joined** [1] - 2:10
**Judge** [3] - 1:11, 7:7, 9:24
**judge** [4] - 5:25, 13:20, 17:12, 18:7
**judgment** [2] - 19:23, 20:16, 26:17
**Judicial** [1] - 38:12
**July** [2] - 14:5, 17:16
**justice** [1] - 27:15
**justification** [2] - 14:6, 14:9

## K

**K-9** [1] - 7:2
**Keeper** [2] - 19:5
**kept** [1] - 26:19
**kilogram** [3] - 5:9, 5:13, 6:14
**kilograms** [3] - 7:17, 10:10, 10:19
**kind** [2] - 14:17, 14:22
**knowing** [1] - 21:6
**knowledge** [1] - 7:13
**known** [1] - 11:19
**knows** [1] - 29:3

## L

**Labor** [1] - 28:10
**lack** [1] - 32:20
**landed** [1] - 9:2
**language** [2] - 11:1, 11:8
**large** [2] - 32:17, 33:7
**last** [3] - 2:10, 25:2, 27:12
**Laura** [3] - 1:18, 2:13,

3:21
**law** [2] - 9:23, 21:13
**lead** [1] - 32:25
**learned** [6] - 5:12, 6:8, 6:16, 13:25, 15:8, 25:6
**least** [4] - 4:8, 12:11, 13:4, 32:10
**leave** [1] - 7:21
**led** [1] - 5:4
**left** [4] - 8:14, 9:15, 9:17, 9:21
**Legal** [1] - 22:18
**legislative** [1] - 10:24
**less** [2] - 13:16, 29:12
**letter** [1] - 13:7
**level** [1] - 33:7
**LEVI** [1] - 1:11
**life** [5] - 4:9, 4:11, 12:12, 17:10, 31:25
**life-long** [1] - 17:10
**likelihood** [1] - 33:3
**limited** [1] - 27:14
**line** [3] - 16:21, 21:23, 22:24
**liquor** [3] - 20:22, 24:11, 31:5
**listed** [1] - 6:4
**listening** [1] - 15:13
**live** [4] - 17:8, 23:8, 30:20, 31:12
**lives** [1] - 17:5
**living** [1] - 32:23
**LLC** [1] - 6:3
**loaded** [1] - 9:20
**located** [3] - 6:13, 8:6, 9:12
**location** [2] - 6:4, 17:8
**Lombard** [1] - 1:24
**look** [4] - 2:11, 10:24, 30:21, 31:22
**looked** [2] - 22:22, 27:16
**looks** [2] - 17:19, 23:25

## M

**machine** [1] - 36:2
**Magistrate** [1] - 7:7
**magistrate** [1] - 17:12
**mailed** [1] - 6:17
**maintained** [1] - 8:11
**major** [1] - 11:21
**man** [1] - 27:13
**managed** [1] - 18:21
**manager** [1] - 22:17
**mandatory** [3] - 4:9, 12:11, 31:25
**manufacturing** [1] -

20:10
**March** [1] - 24:11
**marijuana** [2] - 19:23, 20:12
**Mark** [1] - 7:8
**marshal's** [1] - 28:25
**MARYLAND** [1] - 1:1
**Maryland** [25] - 1:8, 1:25, 5:11, 6:17, 6:25, 7:1, 7:25, 8:17, 8:19, 9:10, 9:21, 17:5, 17:7, 17:17, 19:17, 19:18, 21:14, 21:17, 23:8, 27:5, 29:20, 32:9, 32:19, 38:7
**matter** [1] - 38:10
**maximum** [3] - 4:9, 4:10, 12:12
**mean** [3] - 15:6, 15:12, 19:20
**means** [1] - 29:19
**medication** [1] - 28:5
**meet** [4] - 8:12, 8:19, 9:8, 10:12
**members** [1] - 5:7
**mentioned** [2] - 16:5, 27:11
**mere** [1] - 12:6
**merely** [1] - 11:12
**Merit** [1] - 38:6
**met** [3] - 7:25, 8:6, 16:9
**Mexico** [5] - 8:23, 8:24, 12:7, 19:10, 19:11
**Mickey** [1] - 7:3
**mid** [1] - 33:7
**mid-level** [1] - 33:7
**miles** [1] - 12:6
**mind** [1] - 16:15
**minimum** [3] - 4:8, 12:11, 31:25
**minivan** [1] - 9:11
**mom** [1] - 30:20
**moment** [1] - 34:15
**money** [1] - 7:16
**monitoring** [3] - 17:25, 18:10, 29:8
**month** [1] - 29:3
**months** [7] - 18:19, 24:1, 24:12, 24:22, 26:7, 26:20, 31:2
**morning** [7] - 2:2, 2:13, 3:21, 3:24, 4:1, 9:19, 9:22
**most** [3] - 17:24, 29:11, 29:12
**mother** [9] - 16:25, 17:22, 18:3, 21:25,

22:7, 22:15, 29:9, 32:22, 33:1
**moving** [1] - 7:19
**MR** [14] - 2:5, 2:21, 3:13, 4:16, 5:2, 12:23, 14:10, 24:7, 24:15, 24:20, 24:23, 30:2, 34:6, 37:11
**MS** [37] - 2:13, 2:18, 2:22, 2:25, 3:3, 3:21, 4:21, 12:20, 12:25, 13:10, 15:5, 15:23, 16:19, 16:21, 21:1, 21:8, 21:12, 21:18, 21:22, 22:15, 24:3, 24:25, 25:13, 25:22, 26:16, 26:25, 27:20, 27:22, 27:24, 28:2, 34:13, 34:23, 35:18, 35:23, 36:1, 36:6, 37:12
**multiple** [4] - 12:7, 29:1, 32:24
**must** [2] - 13:7, 15:25

## N

**Nadine** [2] - 1:23, 38:5
**NADINE** [1] - 38:18
**name** [2] - 35:4, 36:12
**named** [1] - 34:9
**namely** [1] - 4:8
**Narcotics** [1] - 5:6
**narcotics** [10] - 7:3, 7:5, 7:24, 11:15, 23:3, 25:16, 30:6, 31:24, 32:3, 32:11
**native** [1] - 17:10
**nature** [4] - 11:23, 22:25, 31:22, 32:4
**necessarily** [1] - 26:25
**necessary** [2] - 29:21, 29:22
**need** [2] - 21:10, 34:16
**needs** [1] - 17:5
**nephews** [1] - 19:8
**New** [2] - 8:23, 8:24
**new** [1] - 28:9
**next** [3] - 8:16, 9:19, 20:4
**nieces** [1] - 19:8
**NO** [1] - 1:4
**Nogales** [1] - 12:7
**noise** [2] - 34:16, 36:1
**nol** [1] - 19:24
**nol-prossed** [1] - 19:24
**non** [1] - 23:17
**non-appearance** [1] - 23:17

**nonappearance** [1] - 33:25
**nonprofit** [1] - 19:4
**normal** [1] - 26:20
**NORTHERN** [1] - 1:2
**note** [5] - 14:25, 23:2, 29:19, 33:10, 33:20
**noted** [1] - 16:3
**notes** [1] - 15:6
**nothing** [1] - 34:12
**novo** [2] - 4:18, 31:22
**number** [2] - 11:4, 15:7

## O

**object** [1] - 18:3
**objection** [1] - 34:13
**observed** [10] - 5:15, 5:17, 5:20, 7:10, 7:21, 8:3, 8:12, 8:19, 8:25, 9:8
**obtain** [1] - 10:12
**obtained** [4] - 5:25, 6:23, 8:21, 9:23
**obvious** [1] - 15:9
**occasions** [1] - 32:24
**occurred** [4] - 17:16, 26:8, 26:11, 33:14
**October** [2] - 1:7, 38:14
**OF** [3] - 1:1, 1:3, 38:1
**offense** [11] - 22:25, 23:21, 23:22, 25:16, 25:19, 26:8, 31:1, 31:23, 32:4, 33:4, 33:5
**offenses** [5] - 12:7, 30:17, 30:19, 31:4, 33:14
**office** [6] - 2:10, 16:22, 19:16, 22:4, 22:19, 30:13
**Office** [1] - 1:19
**OFFICER** [11] - 20:1, 20:3, 20:7, 20:11, 20:14, 20:17, 20:20, 20:24, 22:3, 22:13, 34:19
**Officer** [1] - 1:21
**officer** [3] - 21:5, 32:21, 34:22
**officers** [1] - 8:1
**OFFICIAL** [2] - 38:1, 38:19
**Official** [1] - 1:24
**often** [1] - 11:22
**old** [8] - 18:14, 18:17, 25:2, 27:10, 27:16, 33:12, 35:7, 36:15

**once** [7] - 6:6, 6:25, 9:5, 10:11, 14:17, 28:12, 29:22
**one** [9] - 4:8, 5:23, 10:4, 10:9, 13:6, 24:7, 26:4, 32:10, 34:9
**ones** [1] - 18:8
**operate** [1] - 15:18
**opposed** [1] - 3:18
**options** [1] - 22:22
**order** [4] - 10:10, 13:18, 17:15, 27:24
**ordered** [2] - 17:14, 17:20
**orders** [1] - 27:3
**organization** [1] - 30:9
**organizes** [1] - 19:5
**originally** [1] - 22:4
**otherwise** [2] - 13:14, 15:11
**outlined** [1] - 16:9
**outside** [1] - 5:21
**overcome** [2] - 33:18, 34:2
**own** [3] - 18:21, 27:14, 30:12

## P

**p.m** [4] - 5:15, 7:23, 9:7, 37:14
**package** [20] - 5:20, 5:21, 6:1, 6:4, 6:6, 6:10, 6:12, 6:13, 6:16, 6:18, 6:20, 6:25, 7:4, 7:8, 7:10, 24:15, 24:16, 25:6
**packaged** [1] - 7:12
**packages** [6] - 10:3, 10:5, 14:12, 30:7, 32:8, 32:10
**Page** [2] - 24:10, 30:14
**page** [2] - 13:11, 38:11
**pages** [1] - 31:3
**palm** [2] - 6:13, 24:17
**pandemic** [1] - 18:23
**paper** [1] - 35:20
**parcel** [4] - 5:12, 5:17, 5:18, 6:16
**parked** [1] - 8:10
**part** [3] - 20:4, 33:6, 34:20
**particular** [4] - 3:6, 11:7, 25:5, 30:12
**partner** [1] - 7:3
**party** [12] - 13:16, 13:21, 13:22, 17:2, 21:3, 21:21, 21:22,

22:20, 29:7, 32:18, 32:22, 33:1
**passengers** [1] - 8:11
**past** [1] - 30:16
**patterns** [1] - 11:21
**payment** [2] - 10:10
**penalty** [1] - 4:11
**pending** [4] - 16:24, 17:7, 31:16, 31:18
**people** [1] - 27:2
**perhaps** [1] - 11:7
**period** [8] - 8:4, 8:8, 9:17, 13:20, 24:13, 24:18, 24:19, 25:7
**permitted** [1] - 14:2
**person** [1] - 11:5
**persons** [2] - 11:20, 11:21
**persuasion** [3] - 4:24, 16:6, 16:9
**pest** [3] - 18:21, 18:24, 30:3
**Pest** [1] - 19:4
**phone** [5] - 14:14, 14:15, 16:25, 18:18, 22:16
**phrase** [1] - 11:1
**physical** [1] - 11:13
**picks** [2] - 31:2, 31:7
**place** [3] - 5:22, 35:3, 36:11
**placed** [1] - 24:1, 36:23
**places** [1] - 15:7
**Plaintiff** [1] - 1:14
**plan** [3] - 21:23, 21:24, 22:24
**plans** [1] - 16:14
**plea** [1] - 37:5
**plus** [2] - 18:1, 29:13
**point** [7] - 5:24, 14:17, 21:9, 21:12, 26:2, 27:1, 35:20
**pointed** [2] - 12:9, 33:21
**pose** [2] - 11:24, 23:18
**posed** [2] - 33:22, 33:24
**poses** [2] - 16:11, 30:15
**position** [1] - 10:22
**positive** [1] - 6:7
**possession** [6] - 9:9, 9:11, 10:14, 19:23, 20:12, 23:10
**possible** [1] - 13:21
**possibly** [1] - 7:5
**post** [2] - 18:11, 30:20
**postal** [5] - 5:13, 5:15, 6:24, 7:1, 7:6

**posture** [3] - 17:9, 28:19, 28:22
**potential** [2] - 17:7, 30:10
**potentially** [1] - 28:12
**precise** [1] - 6:15
**prefer** [1] - 17:6
**pregnant** [1] - 18:19
**prejudiced** [1] - 13:23
**prepare** [1] - 26:20
**prepared** [3] - 14:1, 16:7, 17:1
**preponderance** [1] - 16:12
**presence** [2] - 6:7, 7:5
**Present** [1] - 1:20
**present** [6] - 2:9, 2:15, 2:19, 2:22, 2:25, 3:16
**presumably** [2] - 23:11, 31:4
**presume** [3] - 4:18, 21:4, 25:19
**presumption** [15] - 4:6, 4:12, 4:20, 4:23, 12:15, 16:4, 16:17, 25:23, 26:12, 29:16, 31:11, 32:1, 33:19, 34:2
**PRETRIAL** [11] - 20:1, 20:3, 20:7, 20:11, 20:14, 20:17, 20:20, 20:24, 22:3, 22:13, 34:19
**pretrial** [27] - 11:25, 12:8, 16:22, 17:11, 17:20, 17:21, 18:5, 19:16, 22:4, 22:19, 23:19, 23:23, 26:5, 27:8, 28:14, 28:20, 28:21, 29:4, 29:10, 29:18, 30:13, 30:14, 30:24, 31:1, 31:9, 32:20, 34:22
**Pretrial** [1] - 1:21
**previous** [2] - 18:15, 31:19
**previously** [3] - 4:4, 9:10, 31:14
**print** [1] - 24:17
**printed** [1] - 18:24
**prints** [1] - 6:13
**probable** [1] - 23:11
**probation** [20] - 12:9, 19:23, 20:15, 21:5, 22:8, 24:1, 24:12, 25:5, 25:10, 25:15, 25:20, 26:5, 26:6,

26:10, 31:1, 31:3, 31:7, 33:3, 33:15, 33:16
**probationary** [2] - 24:13, 26:5
**procedural** [2] - 28:18, 28:22
**proceed** [3] - 8:25, 34:23, 36:6
**proceeded** [1] - 8:14
**proceeding** [4] - 13:15, 13:17, 18:22, 34:20
**Proceeding** [1] - 37:14
**proceedings** [5] - 3:4, 17:11, 27:3, 29:21, 38:10
**process** [1] - 28:25
**processing** [2] - 6:12, 23:1
**produced** [1] - 26:22
**production** [1] - 16:6
**productively** [1] - 34:5
**professional** [1] - 19:1
**proffer** [5] - 16:7, 26:1, 26:9, 26:14, 32:7
**proffered** [2] - 15:1, 15:16, 25:24
**property** [1] - 18:12
**proposal** [2] - 16:21, 16:22
**proposed** [2] - 12:6, 21:20, 32:19
**proposing** [1] - 22:23
**prossed** [1] - 19:24
**prove** [2] - 16:10, 21:14
**provide** [2] - 10:10, 16:7
**provided** [3] - 10:16, 14:18, 25:25
**providing** [1] - 14:6
**provisions** [1] - 26:13
**Public** [1] - 1:19
**pull** [1] - 13:1
**purchased** [1] - 10:19
**purchasing** [1] - 7:17
**purpose** [1] - 4:3
**purposes** [1] - 14:20
**pursuant** [2] - 13:13, 38:8
**put** [3] - 29:9, 35:24, 36:1

**Q**

**quantity** [1] - 15:11
**quarantined** [1] - 29:1

**questioning** [1] - 17:1
**questions** [3] - 12:17, 21:2, 22:16
**Quinta** [2] - 8:5, 8:20
**quite** [7] - 14:10, 19:1, 25:2, 30:12, 31:23, 32:4, 32:7
**quote** [4] - 11:1, 11:5, 11:16

**R**

**raise** [3] - 34:25, 35:1, 36:8
**raised** [2] - 15:2, 19:15
**ran** [1] - 22:5
**read** [3] - 35:13, 35:15, 36:21
**ready** [2] - 34:23, 36:6
**real** [1] - 6:21
**realize** [1] - 18:23
**really** [2] - 18:25, 25:2
**realm** [1] - 24:14
**Realtime** [1] - 38:5
**reason** [4] - 3:6, 15:6, 15:18, 23:5
**reasonably** [1] - 4:17
**reasons** [4] - 29:23, 31:14, 33:17, 34:1
**rebut** [2] - 15:19, 16:17
**rebuttable** [7] - 4:6, 4:11, 4:20, 16:4, 32:1, 33:19, 34:2
**rebuttal** [1] - 13:25
**rebutted** [2] - 29:15, 31:11
**received** [5] - 5:7, 7:7, 13:14, 19:22, 20:15
**receiving** [1] - 5:9
**recently** [1] - 28:7
**recidivism** [1] - 11:25
**recitation** [2] - 14:11, 15:1
**recognition** [1] - 33:24
**recognize** [1] - 33:10
**recognized** [1] - 28:6
**recognizes** [1] - 33:22
**recommend** [2] - 17:23, 17:25
**recommendation** [1] - 33:25
**recommended** [5] - 17:12, 17:19, 17:23, 18:1, 22:21
**recommending** [1] - 16:23
**reconcile** [1] - 33:24

**record** [10] - 3:10, 19:22, 22:5, 22:8, 22:10, 30:21, 30:24, 31:9, 35:4, 36:12
**records** [5] - 22:5, 25:4, 25:15, 26:5, 26:6
**recovered** [2] - 6:2, 10:2
**reentered** [1] - 8:9
**refer** [1] - 14:22
**reference** [2] - 11:5, 14:23
**references** [1] - 15:20
**referring** [2] - 11:8, 14:14
**refers** [1] - 11:9
**reflect** [1] - 27:16
**reflects** [1] - 12:8
**reflex** [1] - 34:8
**Reform** [6] - 4:22, 10:25, 15:24, 16:10, 17:14, 30:11
**regard** [6] - 12:5, 14:13, 19:19, 19:20, 30:3, 30:24
**Registered** [1] - 38:6
**regulations** [1] - 38:11
**reiterate** [1] - 12:14
**related** [3] - 18:2, 22:9, 23:10
**relating** [1] - 4:3
**relationship** [2] - 18:16
**relative** [1] - 24:2
**relatives** [1] - 19:7
**release** [24] - 3:19, 4:4, 16:14, 16:23, 16:24, 17:12, 17:14, 17:20, 21:23, 22:24, 23:19, 25:17, 25:21, 26:13, 27:2, 27:8, 28:17, 29:18, 30:24, 31:1, 31:9, 31:12, 31:19, 34:1
**released** [9] - 17:22, 18:6, 21:19, 21:24, 28:15, 29:11, 29:12, 29:24
**relevant** [1] - 14:19
**rely** [2] - 14:2, 14:11
**relying** [2] - 15:3, 15:17
**remain** [2] - 2:2, 34:3
**remote** [4] - 3:4, 27:3, 28:23, 29:21
**rental** [4] - 9:11, 9:20, 9:24, 10:15
**repeatedly** [1] - 11:15
**reply** [1] - 30:1

**report** [6] - 11:3, 12:8, 22:2, 24:8, 24:10, 33:21
**Report** [1] - 11:4
**reported** [1] - 38:9
**Reported** [1] - 1:22
**Reporter** [3] - 1:24, 38:5, 38:6
**REPORTER** [2] - 38:1, 38:19
**representation** [1] - 33:23
**represented** [2] - 15:20, 19:21
**representing** [2] - 2:7, 3:15
**request** [1] - 3:18
**requested** [1] - 5:24
**required** [3] - 14:3, 14:6, 21:13
**requires** [1] - 13:2
**reside** [2] - 17:6, 22:6
**resided** [1] - 6:9
**residence** [2] - 7:22, 12:6
**resides** [1] - 18:6
**resolution** [1] - 31:16
**respect** [2] - 14:16, 27:9
**respectfully** [1] - 14:21
**responsibilities** [1] - 17:2
**rest** [1] - 16:16
**restrictive** [3] - 17:24, 29:12, 29:13
**result** [3] - 4:10, 4:11, 32:12
**return** [2] - 8:16, 9:6
**returned** [3] - 6:25, 7:1, 9:15
**reveal** [1] - 20:22
**revealed** [1] - 6:12
**review** [3] - 4:5, 35:19, 35:21
**reviewed** [1] - 17:13
**risk** [13] - 10:23, 11:14, 11:25, 12:5, 12:13, 16:12, 21:14, 23:17, 23:18, 28:3, 28:6, 28:16, 30:15
**risks** [1] - 33:25
**RMR** [2] - 1:23, 38:18
**robbery** [2] - 30:22, 31:7
**Romano** [17] - 1:15, 2:3, 2:8, 3:11, 3:16, 4:25, 14:1, 14:2, 14:9, 15:7, 16:3, 23:1, 23:2, 23:5,

24:6, 25:1, 29:25
**ROMANO** [14] - 2:5, 2:21, 3:13, 4:16, 5:2, 12:23, 14:10, 24:7, 24:15, 24:20, 24:23, 30:2, 34:6, 37:11
**room** [3] - 8:4, 9:14
**roots** [3] - 19:9, 19:12, 19:13
**Rule** [1] - 17:11
**run** [1] - 22:4
**RUSSELL** [1] - 1:11

# S

**safety** [9] - 4:14, 11:1, 11:5, 11:6, 11:9, 11:11, 11:16, 16:2, 29:17
**sales** [2] - 33:6, 33:9
**Samuel** [2] - 6:4, 6:10
**satisfied** [3] - 26:6, 26:7, 37:2
**scan** [1] - 7:4
**search** [7] - 5:24, 6:1, 7:7, 9:23, 10:1, 14:19, 32:8
**searched** [2] - 7:9, 10:2
**seated** [3] - 2:3, 3:22, 20:2
**second** [3] - 13:6, 18:19, 26:4
**section** [1] - 13:1
**secure** [1] - 10:10
**secured** [2] - 9:14, 33:16
**see** [2] - 18:25, 22:1
**seeing** [1] - 35:16
**seized** [1] - 6:6
**sell** [1] - 11:14
**selling** [1] - 23:3
**Senate** [1] - 11:4
**sender** [2] - 6:4, 6:10, 6:18
**sentence** [1] - 12:11
**September** [1] - 24:9
**series** [3] - 16:13, 18:2, 21:7
**serious** [4] - 25:2, 31:23, 32:5, 33:13
**service** [1] - 5:13
**services** [13] - 12:8, 16:22, 17:12, 17:21, 18:5, 19:16, 22:19, 26:6, 28:14, 29:10, 30:13, 30:14, 32:21
**seven** [2] - 18:19, 28:9
**seven-months** [1] - 18:19

**several** [1] - 7:12
**shall** [1] - 13:14
**shift** [1] - 16:5
**shifts** [1] - 16:6
**shipped** [1] - 5:10
**short** [1] - 9:15
**shortly** [1] - 9:13
**shown** [1] - 29:16
**shows** [1] - 31:9
**siblings** [1] - 19:8
**signed** [1] - 9:24
**significant** [3] - 11:25, 12:10, 32:13
**signs** [1] - 28:8
**simply** [1] - 33:23
**sit** [1] - 12:17
**situation** [3] - 11:6, 23:15, 28:9
**Skinner** [1] - 17:5
**skinner** [2] - 20:19, 21:1
**Solo** [1] - 7:11
**somewhat** [1] - 33:23
**son** [2] - 18:17, 18:19
**Sonora** [1] - 12:7
**sorry** [7] - 3:8, 13:7, 24:7, 25:3, 31:21, 34:6, 35:25
**sort** [6] - 15:2, 16:15, 23:9, 23:22, 28:18, 33:3
**sorts** [1] - 22:22
**source** [3] - 7:18, 10:13, 15:15
**sources** [2] - 15:20, 15:21
**Southern** [1] - 22:17
**speaking** [1] - 5:4
**Special** [3] - 1:16, 2:9, 3:16
**specific** [1] - 23:16
**specifically** [1] - 7:20
**spent** [2] - 23:2, 23:5
**spread** [1] - 28:8
**stacks** [1] - 7:12
**stage** [2] - 23:14, 25:24
**standard** [1] - 18:1
**standards** [1] - 17:13
**stark** [1] - 28:20
**start** [1] - 16:13
**state** [4] - 7:18, 13:16, 35:4, 36:12
**STATES** [2] - 1:1, 1:3
**States** [12] - 1:15, 1:16, 2:6, 2:8, 3:14, 3:16, 7:22, 11:17, 35:11, 36:19, 38:6, 38:12

**statute** [1] - 31:15
**Staybridge** [2] - 8:2, 8:14
**stenographically** [1] - 38:9
**stenographically-reported** [1] - 38:9
**stepchild** [1] - 18:16
**still** [2] - 4:23, 28:24
**stood** [1] - 34:7
**street** [2] - 33:6, 33:9
**Street** [5] - 1:24, 6:5, 6:9, 6:11, 6:21
**strengths** [1] - 26:14
**strong** [2] - 19:17, 32:7
**submit** [2] - 13:24, 18:10
**subsequent** [3] - 6:12, 7:6, 7:19
**subsequently** [4] - 6:8, 6:23, 7:8, 8:21
**substance** [1] - 18:2
**substantial** [2] - 32:11, 32:12
**Suburban** [1] - 9:16
**successfully** [1] - 25:5
**suggest** [2] - 23:17, 25:4
**suggestion** [1] - 15:9
**Suites** [4] - 8:2, 8:15, 9:12, 9:14
**summary** [2] - 10:17, 10:21
**supervise** [1] - 28:15
**supervised** [1] - 25:17
**supervising** [1] - 17:21
**supervision** [1] - 23:23
**supply** [4] - 10:13, 10:15, 33:7
**supporting** [1] - 13:3
**surmised** [1] - 9:4
**surveillance** [5] - 8:12, 8:19, 14:12, 15:10, 32:7
**sworn** [2] - 35:2, 36:10
**system** [1] - 27:15

# T

**tail** [1] - 25:7
**Tamika** [1] - 18:18
**Task** [2] - 5:6, 8:1
**task** [1] - 5:7
**technologically** [1] - 36:4
**ten** [5] - 12:11, 13:4,

13:17, 13:20, 13:22
**ten-day** [1] - 13:20
**term** [2] - 12:10, 31:24
**terms** [1] - 25:21
**tested** [2] - 6:6
**THE** [111] - 1:1, 1:1, 1:11, 2:2, 2:11, 2:17, 2:19, 2:24, 3:1, 3:4, 3:8, 3:10, 3:20, 3:24, 4:1, 4:2, 4:17, 4:25, 12:18, 13:9, 14:8, 14:25, 15:14, 16:17, 16:20, 19:19, 20:1, 20:2, 20:3, 20:4, 20:7, 20:9, 20:11, 20:12, 20:14, 20:15, 20:17, 20:18, 20:20, 20:21, 20:24, 20:25, 21:3, 21:10, 21:16, 21:20, 22:1, 22:3, 22:11, 22:13, 22:14, 23:24, 24:6, 24:8, 24:19, 24:22, 24:24, 25:11, 25:14, 26:3, 26:23, 27:18, 27:21, 27:23, 28:1, 29:25, 31:18, 34:16, 34:19, 34:21, 34:24, 35:1, 35:3, 35:5, 35:6, 35:7, 35:8, 35:9, 35:10, 35:12, 35:13, 35:14, 35:15, 35:16, 35:17, 35:21, 35:25, 36:3, 36:7, 36:8, 36:11, 36:13, 36:14, 36:15, 36:16, 36:17, 36:18, 36:20, 36:21, 36:22, 36:23, 36:25, 37:1, 37:4, 37:5, 37:6, 37:7, 37:8, 37:9, 37:10, 37:13
**therefrom** [1] - 13:14
**they've** [2] - 26:19, 31:11
**third** [9] - 17:2, 21:3, 21:21, 21:22, 22:20, 29:7, 32:18, 32:22, 33:1
**third-party** [9] - 17:2, 21:3, 21:21, 21:22, 22:20, 29:7, 32:18, 32:22, 33:1
**Thompson** [21] - 5:20, 5:23, 8:13, 8:19, 8:21, 8:25, 9:4, 9:6, 9:8, 9:10, 9:15, 9:17, 9:20, 9:25, 10:8, 10:11, 10:16, 10:18, 14:15
**Thursday** [1] - 1:7

**ties** [8] - 19:14, 19:17, 21:13, 21:15, 21:16, 21:18
**Title** [3] - 12:22, 12:25, 13:1
**today** [13] - 13:25, 16:25, 17:4, 18:18, 21:2, 22:24, 23:2, 24:4, 25:6, 25:9, 25:23, 28:19, 34:11
**together** [1] - 29:15
**took** [3] - 9:9, 9:11, 10:8
**top** [1] - 31:6
**total** [2] - 7:14, 10:8
**towards** [2] - 8:23, 24:20
**track** [1] - 30:24
**tracked** [1] - 8:23
**trafficker** [1] - 11:19
**trafficking** [3] - 7:14, 12:4, 30:6
**training** [1] - 7:13
**transcript** [2] - 38:9, 38:11
**transfer** [1] - 28:25
**transferred** [1] - 17:17
**travel** [3] - 7:22, 10:9, 10:13
**traveled** [3] - 8:10, 8:24, 9:21
**traveling** [1] - 8:18
**trial** [2] - 13:15, 13:17
**tribunal** [1] - 25:12
**trips** [1] - 10:8
**troubled** [1] - 33:17
**troubling** [2] - 33:2, 33:23
**true** [4] - 25:7, 26:15, 33:6, 38:9
**True** [1] - 6:3
**truth** [2] - 21:4, 21:5
**Tucson** [29] - 5:10, 6:5, 6:17, 6:21, 6:24, 7:16, 7:23, 7:25, 8:1, 8:3, 8:6, 8:10, 8:17, 8:20, 9:1, 9:12, 9:21, 10:8, 10:9, 10:11, 12:6, 17:10, 19:2, 19:7, 19:9, 19:12, 21:18, 22:18, 32:18
**turn** [1] - 8:25
**two** [9] - 10:3, 18:15, 18:17, 26:20, 26:21, 26:23, 28:11, 31:2, 32:10
**two-year-old** [1] - 18:17
**typically** [1] - 10:9

## U

**U.S** [5] - 2:8, 2:9, 3:17, 7:7, 7:12
**U.S.C** [1] - 38:8
**ultimately** [1] - 17:20
**under** [8] - 2:7, 3:15, 12:25, 13:18, 15:24, 16:9, 17:13, 31:14
**underlying** [1] - 5:3
**understood** [2] - 4:25, 21:20
**unfortunate** [1] - 31:11
**UNITED** [2] - 1:1, 1:3
**United** [12] - 1:15, 1:16, 2:6, 2:7, 3:14, 3:15, 7:22, 11:17, 35:11, 36:19, 38:6, 38:12
**unlawful** [1] - 31:5
**unless** [3] - 12:16, 13:4, 13:16
**unusual** [2] - 11:20, 28:20
**unusually** [1] - 28:20
**up** [8] - 2:21, 7:25, 13:1, 29:9, 31:2, 31:7, 34:7, 35:20
**update** [1] - 27:19
**USC** [1] - 13:6
**utilized** [1] - 11:2

## V

**valued** [1] - 18:12
**van** [1] - 9:20
**vapor** [1] - 24:11
**vapors** [1] - 20:22
**various** [1] - 32:8
**vehicle** [9] - 5:22, 6:1, 7:22, 8:9, 9:9, 9:24, 10:2, 10:15
**versus** [3] - 2:6, 3:14, 11:18
**vetted** [3] - 22:1, 22:4, 22:18
**victim** [1] - 11:7
**violate** [1] - 29:4
**violation** [3] - 14:17, 25:9, 25:11
**violence** [7] - 11:13, 23:6, 23:10, 29:14, 30:8, 30:10, 30:21
**violent** [2] - 30:17, 30:19
**vs** [1] - 1:4

## W

**wait** [2] - 3:6, 17:18
**waiting** [1] - 29:3
**waived** [1] - 13:20
**waivers** [1] - 3:5
**warrant** [4] - 5:24, 7:7, 9:23, 10:1
**warrants** [2] - 14:19, 32:8
**Warwick** [4] - 5:14, 5:18, 6:3, 6:19
**weapons** [4] - 23:10, 30:17, 30:19, 30:22
**website** [1] - 18:24
**week** [2] - 2:10, 28:11
**weigh** [1] - 28:17
**weighing** [2] - 29:6, 29:15
**weighs** [1] - 25:18
**weight** [2] - 32:6, 32:13
**well-known** [1] - 11:19
**west** [2] - 7:22, 8:25
**wife** [5] - 18:18, 18:20, 22:6, 22:8, 32:25
**Williams** [1] - 11:18
**willing** [6] - 18:9, 18:11, 28:15, 29:8, 29:9, 34:11
**wire** [1] - 13:12
**wireless** [1] - 7:11
**wiretap** [8] - 12:21, 12:23, 14:19, 14:23, 15:16, 15:17, 15:22, 26:17
**wish** [2] - 31:9, 35:22
**witness** [1] - 11:8
**word** [1] - 28:1
**write** [1] - 30:14

## Y

**year** [4] - 7:20, 18:17, 35:8, 36:16
**years** [11] - 4:9, 12:11, 18:14, 22:18, 25:3, 27:12, 27:13, 32:1, 35:7, 36:15

## §

**§** [1] - 38:8